STATE OF NORTH CAROLINA v. WARREN HART

No. 797SC304

(Filed 8 January 1980)

**1. Homicide § 21.8— second degree murder—sufficiency of evidence**

The State's evidence was not all exculpatory and was sufficient to support a conviction of defendant for second degree murder of his wife where it tended to show that defendant told an officer that his wife came toward him with a knife and that he pulled his pistol and shot her; the officer did not observe any knife in the room where the shooting occurred; deceased suffered four wounds caused by three bullets; and the gun was very close to deceased's head when the wounds were inflicted.

**2. Criminal Law § 112.6— instructions that insanity defense not raised**

Where defendant filed a notice of intent to raise the defense of insanity and, pursuant to G.S. 15A-1213, the judge informed prospective jurors of the possibility that defendant might rely on the defense of insanity, it was proper for the court to inform the jury in the charge that the defense of insanity had not been raised at the trial and that it should not be considered in the jury's deliberations.

**3. Criminal Law § 112.6; Homicide § 24.3— self-defense—instructions on burden of proof**

The trial court's instruction that "the burden is upon the state to satisfy the jury from the evidence in the case that the killing was not justified on the grounds of self-defense" did not constitute prejudicial error where the charge as a whole placed the burden on the State to prove "beyond a reasonable doubt" that defendant did not act in self-defense.

**4. Criminal Law § 113.4— failure to define "altercation"**

The trial court did not err in failing to define "altercation" since it is a word of common usage and no request was made for a special instruction.

APPEAL by defendant from *Fountain, Judge.* Judgment entered 7 December 1978 in Superior Court, EDGECOMBE County. Heard in the Court of Appeals 12 November 1979.

On 24 July 1978, at approximately 5:00 a.m., Warren Hart shot and killed his wife, Bessie Hart. Rocky Mount policemen, in response to a call, were in defendant's neighborhood the morning of the shooting. Officer Frank Villalobos testified at trial that he was driving down the street, preparing to clear the area, when he saw defendant rush out of his home, shouting for help and saying that he had killed his wife. The officer parked his car, took the gun that defendant was carrying, and accompanied defendant into his home. Villalobos found Bessie Hart lying on the bedroom floor

between the bed and a baby's crib. The deceased's head was toward the back of the room, and her feet toward the door. Villalobos testified that, "The bed was a pool of blood and seemed like the body marked as the body fell off the bed. It made marks in the position or form in which the body fell off the bed." Defendant told Villalobos that his wife lunged at him with a knife and he had to shoot her. The officer did not observe any knife at that time anywhere in the room.

Officer William Davis was also in defendant's neighborhood on the morning of the killing and responded to Officer Villalobos' call for assistance. Davis entered defendant's home, viewed the body and then advised defendant of his constitutional rights.

Later, in the kitchen, the defendant told Officer Davis that his wife had made threats at him, cursing and taunting. Defendant stated he went into the bedroom to kiss his wife goodbye and that she lunged at him and he jumped back, pulled a revolver and shot her. Defendant further told Officer Davis that when he went into the bedroom to put on his shirt and jacket, his wife slashed at him, and he jumped back, pulled a .32 caliber revolver from the waistband of his pants, and shot the victim. Defendant further stated his wife said previously if the police did not take care of Mr. Hart, she would.

Defendant was taken to the police station where he signed a waiver of rights form. While at the police station, immediately after the shooting, defendant gave an account of the events surrounding the shooting to Lieutenant James Hoell as follows: Defendant and his wife went to bed around 1:00 o'clock the morning of the shooting. Defendant had wanted to have sexual relations, but his wife refused. The couple argued briefly, and then Bessie Hart went into the kitchen. She returned with a butcher knife wrapped in a towel and went into the couple's bedroom. Bessie Hart slept in the bedroom. Defendant spent the night on the couch in the front room. At some point, while defendant was on the couch, Bessie Hart returned to the kitchen, stayed there for approximately five minutes and then returned to the bedroom. While she was passing through the front room, Bessie Hart told defendant she was going, in Hoell's words, " . . . to get rid of his damn ass."

Defendant told [Lieutenant] Hoell that he got up around 5:30 the morning of the shooting. Defendant is a veteran and was going to the V. A. Hospital in Durham for treatment. He went out to a cinder block pile at the back of his house, got his .32 caliber pistol and returned to the house. Defendant stated that he kept the gun for protection. He said that he wanted to kiss his wife goodbye because he was going to be gone for several days and felt that a man ought to kiss his wife when he was going to leave.

Ed Williford of the Rocky Mount Police Department testified that defendant stated to him that after his wife refused to kiss him goodbye she told defendant to get away from her; that she wanted nothing to do with him; that she came up from the bed with a knife in her hand and came toward him. Defendant then shot his wife, and she fell back on the bed.

Bessie Hart's body was examined by a pathologist. Four wounds, caused by three bullets, were identifed. One bullet was found in the midline of the head, above the nose. The bullet was flattened and lay between the skin and the skull. A second wound was found near the opening of the right ear. A third wound was in the palm of the left hand and a fourth wound was found on the deceased's forehead. The bullet that caused the fourth wound was found flattened against the back of the skull. According to the pathologist, this was the bullet that caused death. The pathologist further surmised that the bullet that caused the wound in Bessie Hart's hand was the one that was found lodged on the outside of her skull.

Further facts are set forth in the opinion.

From a verdict of guilty of murder in the second-degree, defendant appealed.

*Attorney General Edmisten, by Associate Attorney Thomas G. Meacham, Jr., for the State.*

*Don Evans for defendant appellant.*

HILL, Judge.

[1] Defendant first assigns as error the trial court's refusal to allow his motion to dismiss. Defendant asserts that all of the State's evidence was exculpatory, and for that reason the motion

to dismiss should have been allowed. *See State v. Johnson*, 261 N.C. 727, 136 S.E. 2d 84 (1964). We agree with defendant's analysis of *Johnson*, but find the facts in this case distinguishable.

Officer Villalobos testified that defendant exclaimed to him that he had shot and killed his wife; that he removed a .32 caliber pistol from defendant's hand; that the bed in the room where the victim was killed was a pool of blood; that he saw the victim lying with her head away from the door; that he did not observe any scratches or stab wounds on defendant; and that at no time did he see a knife in the bedroom where Bessie Hart died. Officer Davis testified that defendant told him the deceased lunged at him and that the defendant jumped back, pulled his pistol, and shot his wife.

Lieutenant Hoell interviewed defendant the day of the shooting. Hoell testified that defendant told him he went outside the morning of the shooting to get his pistol. Defendant then entered the room where his wife was sleeping to kiss her good-bye. Defendant told him he saw the knife in his wife's hand, but that defendant never did say Bessie Hart came at him with the knife.

Dr. Emerson Scarborough, the pathologist, testifying for the State, described Bessie Hart's wounds. Dr. Scarborough conjectured that the wound in Bessie Hart's hand and the superficial wound in her head were caused by the same bullet. The pathologist stated that it was possible that the wounded hand was in contact with the head, that the hand was close to the muzzle of the gun; and that the muzzle of the gun was very close to the hand if not actually touching it. The doctor further opined that the gun was "several inches" away from Bessie Hart when the wound near her ear and the fatal wound were inflicted.

Taken as a whole, the State's evidence was inculpatory. Defendant's first assignment of error is overruled.

[2]  Defendant asserts by his second assignment of error that the trial judge erred when, in his charge to the jury, he mentioned that defendant had filed pretrial notice that he might rely on the insanity defense. The judge told the jury that the defense had not been raised at trial and instructed them to disregard insanity as a

defense in their deliberations. This assignment of error is also without merit and overruled.

G.S. 15A-959 requires pretrial notice by a defendant if he intends to raise the defense of insanity. Defendant filed such notice and, pursuant to G.S. 15A-1213, the judge informed prospective jurors of the possibility that defendant might rely on the affirmative defense of insanity. It was proper at the close of all the evidence for the trial judge to inform the jurors that the insanity defense indeed had not been presented in order to eliminate any idea the jury might have had that they were still to consider the defense.

[3] Defendant relied on self-defense at trial. Therefore, the burden of disproving self-defense beyond a reasonable doubt was placed upon the State. *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975); *State v. McCoy*, 34 N.C. App. 567, 239 S.E. 2d 300 (1977). The judge, in his instruction, stated that,

> . . . where the question of self-defense arises in the case, the burden is upon the state to satisfy the jury from the evidence in the case that the killing was not justified on the grounds of self-defense.

We agree with defendant that the burden on the State is to prove beyond a *reasonable doubt* that the killing was not justified on the grounds of self-defense. Considering the charge as a whole, we find that it fairly and correctly presents the law and that there is no ground for reversal. *See State v. Tomblin*, 276 N.C. 273, 171 S.E. 2d 901 (1970). At the beginning of his charge, the judge told the jury that the State's burden was to prove defendant's guilt beyond a reasonable doubt. Furthermore, the jury was told that the defendant had no burden of proving self-defense. Finally, the judge instructed the jury that the State's burden of proof in seeking a conviction for first-degree murder, second-degree murder, or manslaughter was to satisfy them beyond a *reasonable doubt* that the defendant committed the proscribed acts, with the requisite *mens rea*, and did not do so in defense of his own person. We find no prejudicial error in the judge's charge.

Additionally, we find that the judge did not err in his explanation to the jury that the plea of self-defense is not available

to an aggressor. The law was explained in light of the evidence in the particular case and not upon a set of hypothetical facts. G.S. 1-180, G.S. 15A-1232.

[4]   There was no error in the judge's failure to define "altercation", as contended by the appellant. It is a word of common usage, and no request for a special instruction was made. *See State v. Jennings*, 276 N.C. 157, 171 S.E. 2d 447 (1970).

For the reasons stated above, we find in the judgment below

No error.

Chief Judge MORRIS and Judge PARKER concur.