STATE OF NORTH CAROLINA v. CLINTON DALE LONG AND JAMIE RAY WATKINS

No. 8113SC1096

(Filed 3 August 1982)

1. **Criminal Law § 111.1— informing prospective jurors of charges against defendants**

    The trial court's statement to prospective jurors that defendants were charged with "conspiracy and trafficking in marijuana" met the requirement of G.S. 15A-1213 that the judge "briefly inform" prospective jurors of the charges against each defendant, a detailed explanation of the charges not being required until the court's instructions to the jury after the presentation of evidence.

2. **Criminal Law § 111.1— instructions on charges against defendants—removal of some charges—curative instruction—similar evidence**

    In a prosecution for conspiracy and trafficking in marijuana, any prejudice in the trial court's instruction to the jury prior to trial that one defendant was also charged with failing to stop for a blue light and siren and carrying a concealed weapon was cured when the trial court removed those counts and instructed the jury not to consider them. Furthermore, defendants were not prejudiced by the possible inference from such instruction that defendants had tried to elude arrest since explicit testimony on the subject was admitted at trial without objection by defendants.

3. **Automobiles and Other Vehicles § 46— opinion testimony as to speed**

    A police officer who followed defendants' vehicle for three miles in his automobile could properly state his opinion as to the speed at which he was traveling when trying to overtake defendants' vehicle.

4. **Criminal Law § 46.1— evidence of flight by defendants**

    An officer was properly permitted to testify that after being stopped, defendants jumped out of their vehicle and attempted to run away, since an accused's flight from the scene of the crime is competent evidence on the question of guilt.

5. **Criminal Law § 169.6— failure of record to show excluded testimony**

    The exclusion of testimony will not be held prejudicial where the record fails to show what the excluded testimony would have been.

6. **Narcotics § 3.1— admissibility of one bale of marijuana**

    In a prosecution for trafficking in marijuana, the trial court properly permitted the State to exhibit to the jury one of the 172 bales of marijuana which

defendants were charged with possessing to illustrate how each of the 172 bales had been dissected to determine whether it contained marijuana throughout.

**7. Criminal Law § 50.2— opinion testimony by nonexpert**

An SBI agent was properly permitted to testify as to the world-wide transmission capabilities of an amateur radio found in a truck hauling marijuana, even though the agent was never qualified as an expert, where the agent testified that he was familiar with amateur radios such as the one found in the truck and with their transmission capabilities and that he had at one time been licensed to operate such radios, since the agent was clearly more qualified than the jury to form an opinion as to the transmission capabilities of the radio found in the truck.

**8. Narcotics § 4— trafficking in marijuana—sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for trafficking in marijuana by the possession of 10,000 pounds or more of marijuana where it tended to show that defendants were riding in and operating a truck containing 172 bales of marijuana weighing 10,090 pounds, the storage area of the truck reeked with the odor of marijuana, and defendants attempted to flee when the truck was stopped by the police.

**9. Criminal Law § 158.1— admissibility of photograph—absence from record on appeal**

The admissibility of a photograph could not be determined on appeal where it was not included in the record on appeal as required by App. R. 9(b)(3).

**10. Criminal Law § 122.2— requiring jury to deliberate further—no coercion of verdict**

The trial court did not coerce guilty verdicts by twice requiring the jury to continue deliberations after it had reported an inability to agree where, following the initial difficulties, the jury continued deliberating until the end of the day and at that time reported that the vote had changed, and where the court did not express an opinion as to the guilt or innocence of the defendants and did not imply that any juror should surrender his own free will and judgment.

**11. Criminal Law § 131.2— newly discovered evidence—corroboration of trial testimony—no new trial**

Defendants were not entitled to a new trial on the basis of newly discovered evidence where such evidence merely corroborated their own testimony.

**12. Narcotics § 5— trafficking in narcotics—reduction of sentence—cooperation against others—naming person at trial**

The trial court did not err in failing to reduce defendants' sentence for trafficking in marijuana pursuant to G.S. 90-95(h)(6) on the ground that they had provided substantial assistance in the identification, arrest or conviction of an accomplice, accessory, co-conspirator or principal where defendants merely

State v. Long

named at trial a third person as the only one they knew to be connected with the truck used to haul the marijuana.

**13. Criminal Law § 138.2; Narcotics § 5— trafficking in marijuana—no cruel and unusual punishment**

    Minimum sentences of 16 years and fines of $200,000 imposed upon defendants for trafficking in more than 10,000 pounds of marijuana came within the statutory limits and did not constitute cruel and unusual punishment although defendants contended the punishment was disproportionate to the crime in that they were simply driving a truck which contained more than 10,000 pounds of marijuana in its locked storage compartment to which they had no key.

APPEAL by defendants from *Bowen, Judge.* Judgments entered 4 June 1981 in Superior Court, BRUNSWICK County. Heard in the Court of Appeals 26 April 1982.

Defendants were each indicted for three counts of conspiracy to traffic in marijuana by the possession, transfer and delivery of 10,000 pounds or more of marijuana and three counts of trafficking in marijuana by the possession, transfer and delivery of 10,000 pounds or more of marijuana. The charges were consolidated for trial.

State presented evidence at trial tending to show the following: On the morning of 16 December 1980, Detective Cecil Logan of the Brunswick County Sheriff's Department observed a U-Haul truck traveling south on Highway 17. Logan began following the truck and became suspicious that it was involved in drug traffic. He advised another officer of his location by radio, turned on his blue light and siren and attempted to stop the truck. Logan was traveling in excess of 55 or 60 miles per hour at this time. After following the truck for three miles, Logan pulled up beside the driver and motioned for him to pull over. The driver, defendant Watkins, accelerated instead and turned his wheel to the left, nearly running Logan off the road. Officer Nance then arrived on the scene and stopped the truck by pulling in front of it and stopping his vehicle. As soon as the truck stopped, a male passenger jumped out and ran into the woods. Officer Nance followed and apprehended him. Both defendants also jumped out of the truck and started running, but Logan pulled his revolver and stopped them. Logan and Nance then noticed the strong odor of marijuana emanating from the rear storage area of the truck. The key to the storage area was found in the possession of the male passenger,

Felix Morales-Rivero. After obtaining a search warrant, Logan and Nance opened the rear of the truck and found 172 bales of marijuana weighing 10,090 pounds. In the cab of the truck Logan found a box and a bag containing a ham radio and antenna capable of world-wide transmission. Investigation of the rental agreement for the truck revealed that the agreement had been signed by one Elliott Wade Coleman. Joann Kraft, the rental agent, identified Watkins from a photograph as one of two men who accompanied Coleman when he rented the truck.

Each defendant moved for a directed verdict at the close of State's evidence. Upon denial of their motions, defendants presented the following evidence: On 15 December 1980, David Horne offered to pay defendant Watkins $500 to drive a truck loaded with furniture from Holden Beach, North Carolina, to Columbia, South Carolina. Out of the $500, Watkins was to pay someone to follow him to Columbia to bring him back to his home in North Myrtle Beach, South Carolina. On the morning of 16 December 1980, Horne picked up Watkins and drove him to Holden Beach to pick up the truck. On the way, they stopped to pick up defendant's friend, Long. Long agreed to ride with Watkins and Horne to pick up the truck in Holden Beach, after which Long and Watkins planned to return to pick up Long's truck so that Long could follow Watkins to Columbia. Upon arriving in Holden Beach, Horne introduced Morales-Rivero and explained that Morales-Rivero would ride with defendants in order to show them where to leave the truck loaded with furniture. Defendants and Morales-Rivero got in the truck and began driving down Highway 17 toward South Carolina. Watkins was at the wheel. About one mile from the South Carolina state line two police cars drove past and motioned for them to pull over, which Watkins did. After pulling over, Morales-Rivero jumped out of the truck and ran. Defendants got out of the truck but did not run. Defendants knew nothing of the marijuana in the back of the truck and had not noticed any odor coming from the truck. Defendants do not know Elliott Wade Coleman and did not accompany him when he rented the truck. The picture of Watkins which Joann Kraft identified was taken shortly after his arrest on 16 December 1980. Watkins has changed his appearance since then by cutting his hair and shaving his beard, and Ms. Kraft was unable to identify him at trial.

State v. Long

Several witnesses testified to the good character of the two defendants.

On rebuttal State introduced into evidence the photograph of defendant Watkins identified by Joann Kraft.

At the close of the evidence defendant Watkins's renewed motion for directed verdicts on all charges was denied. Defendant Long's motion for directed verdicts was allowed on two of the conspiracy charges but denied as to all other charges. Thereafter, State agreed to dismiss all of the charges against defendants except one count of trafficking by possession of 10,000 pounds or more of marijuana as to each defendant and one count of conspiracy to traffic by possession of 10,000 pounds or more of marijuana as to defendant Watkins. The jury found both defendants guilty of trafficking by possession of 10,000 pounds or more of marijuana. Watkins was found not guilty on the conspiracy charge. From judgments imposing prison terms and fines, defendants appeal.

*Attorney General Edmisten, by Associate Attorney G. Criston Windham, for the State.*

*Marvin J. Tedder for defendant appellants.*

MORRIS, Chief Judge.

[1] Defendants make thirty-one assignments of error on appeal. In their first assignment, they argue that the trial judge was overly brief in his statement of the charges to the prospective jurors. Defendants concede that G.S. 15A-1213 requires only that the judge "briefly inform" prospective jurors of the charges against each defendant and specifically prohibits the judge from reading the pleadings. Nevertheless, defendants contend that in this case the judge should have stated the charges in their entirety and explained the elements thereof rather than saying only that defendants were charged with "conspiracy and trafficking in marijuana." We find no error. The purpose of G.S. 15A-1213 is to "orient the prospective jurors as to the case" in such a way as to avoid giving jurors a "distorted view of the case" through use of the "stilted language of indictments and other pleadings." Official Commentary to G.S. 15A-1213 and G.S. 15A-1221, referring also to G.S. 15A-1213; *State v. Shelton,* 53 N.C. App. 632, 281 S.E. 2d 684

(1981), *cert. den. and appeal dismissed,* 305 N.C. 306 (1982); *State v. McNeil,* 47 N.C. App. 30, 266 S.E. 2d 824, *disc. review denied,* 301 N.C. 102, 273 S.E. 2d 306 (1980), 450 U.S. 915, 67 L.Ed. 2d 339, 101 S.Ct. 1356 (1981); *State v. Laughinghouse,* 39 N.C. App. 655, 251 S.E. 2d 667, *cert. denied,* 297 N.C. 615, 257 S.E. 2d 438 (1979). The court's statement of the charges here was sufficient for that purpose. A detailed explanation of the charges is not required until the judge's instructions to the jury after the presentation of evidence.

[2]   In their second and third assignments of error defendants contend that the trial judge gave prejudicial conflicting instructions to the jury prior to trial when he first stated that defendant Watkins was also charged with failing to stop for a blue light and siren and carrying a concealed weapon but subsequently stated that the defendants were not so charged or that if they were, it was not the jury's concern. According to defendants, the initial incorrect statement implied that they had attempted to elude arrest, and its prejudicial effect was not cured by the subsequent conflicting instruction. We disagree. The initial charge was made in response to State's motion, at the opening of trial, to consolidate with the six counts of conspiracy and trafficking in marijuana misdemeanor charges of failing to stop for a blue light and siren and carrying a concealed weapon against defendant Watkins. The court allowed consolidation. Following jury selection, however, the court instructed the jury that the misdemeanor charges were not to be considered. The record does not reveal why those charges were withdrawn. In any event, any error in the initial consolidation was cured by the court's subsequent removal of those counts and explicit instructions to the jurors not to consider them. *See State v. Bumgarner,* 299 N.C. 113, 261 S.E. 2d 105 (1980); *State v. Hart,* 44 N.C. App. 479, 261 S.E. 2d 250 (1980). Furthermore, defendants could not have been prejudiced by the possible but remote inference from the initial charge that defendants had tried to elude arrest since explicit testimony on the subject was admitted at trial without objection by defendants.

[3]   In assignments four and five, defendants again object to the admission of evidence which tended to show that they attempted to elude arrest. They first argue that Officer Logan's opinion as to the speed at which he was traveling when trying to overtake the U-Haul truck was inadmissible because Logan was not shown

to have had a reasonable opportunity to judge such speed and because the court failed to instruct the jury that testimony that a vehicle is traveling between one named speed and another is testimony only that the vehicle was traveling at the lower estimated speed. This argument fails for several reasons. Defendants failed to object to the testimony at trial and have, therefore, waived their right to do so on appeal. *State v. Lucas,* 302 N.C. 342, 275 S.E. 2d 433 (1981). Even if defendants had objected to the testimony, they waived that objection by eliciting the same testimony on cross-examination. *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976). Admission of the testimony was proper, in any event, since it is obvious that a trained police officer who follows a vehicle for three miles in his automobile has had a reasonable opportunity to judge the speed at which his own vehicle is traveling. Finally, omission of the stated charge was without prejudice since, even had the trial court given the instruction, the testimony would still have established that Logan was traveling in excess of 55 m.p.h.

[4] Defendants also object to the admission of Officer Logan's testimony tending to show that after being stopped, defendants jumped out of the truck and attempted to run away. Again, defendants waived their right to object to this testimony on appeal by failing to object to it at trial and by eliciting similar testimony on cross-examination. *State v. Lucas, supra; State v. Covington, supra.* In addition, an accused's flight from the scene of the crime is competent evidence on the question of guilt. *State v. Jones,* 292 N.C. 513, 234 S.E. 2d 555 (1977); *State v. Drakeford,* 37 N.C. App. 340, 246 S.E. 2d 55 (1978).

Defendants have abandoned assignments of error six through nine by failing to argue them on appeal. App. R. 28(b).

[5] In the next three assignments of error, defendants object to the court's exclusion of testimony by Officer Logan. Defendants attempted to question Logan on cross-examination as to the type of bond posted by Morales-Rivero, as to alleged exculpatory statements made by defendants following their arrest, and as to whether defendants had been charged with resisting arrest in connection with this case. State's objections to these questions were sustained. Defendants assert various reasons why the answers to the questions were admissible and their exclusion,

prejudicial. The answers do not appear in the record, however, and we are therefore unable to determine whether the court's rulings were prejudicial. *State v. Faircloth*, 297 N.C. 100, 253 S.E. 2d 890, *cert. denied*, 444 U.S. 874, 62 L.Ed. 2d 102, 100 S.Ct. 156 (1979); *State v. Carr*, 54 N.C. App. 309, 283 S.E. 2d 175 (1981). Furthermore, defendants subsequently presented direct evidence as to the type of bond furnished by Morales-Rivero and testified that they had refused to make any statements to the officers following their arrest. These assignments are overruled.

Assignments of error thirteen through eighteen are deemed abandoned by reason of defendants' failure to argue them on appeal. App. R. 28(b).

[6] In assignments of error nineteen and twenty defendants argue that it was unduly prejudicial to allow the State to exhibit to the jury, over defendants' objection, one of the bales of marijuana found in the U-Haul truck. According to defendants, the prejudicial effect that such a large amount of marijuana would have on the jury far outweighed any probative value which the marijuana might have. We disagree. State used the bale of marijuana to illustrate how each of the 172 bales found in the truck had been dissected to determine whether it contained marijuana throughout. Such evidence was clearly relevant and was, therefore, admissible even if it did have a significant prejudicial effect on the jury. *State v. Covington, supra; State v. Green*, 251 N.C. 40, 110 S.E. 2d 609 (1959). In any event, we fail to perceive any undue prejudice to defendants from showing the jury only one bale of marijuana out of the 172 bales weighing over 10,000 pounds which defendants were charged with possessing.

[7] Defendants next assign error to the admission of testimony by John Dorsett of the S.B.I. as to the world-wide transmission capabilities of the amateur radio found in the U-Haul truck on the ground that Dorsett had not been qualified as an expert in that field. However, defendants failed to object specifically to Dorsett's qualifications to so testify and have, therefore, waived objection to them. *State v. Wright*, 52 N.C. App. 166, 278 S.E. 2d 579, *cert. denied*, 303 N.C. 319 (1981). Further, Dorsett did testify that he was familiar with amateur radios such as the one found in the truck and with their transmission capabilities and that he had at one time been licensed to operate such radios. Thus, even

though never qualified as an expert, he was clearly more qualified than the jury to form an opinion as to the transmission capabilities of the amateur radio found in the U-Haul truck. *Id.* This assignment of error is overruled.

[8]   Defendants contend in assignments of error twenty-two and twenty-six that the court erred in denying their motions for directed verdicts at the close of State's and all of the evidence on the grounds that there was no showing that defendants knew the U-Haul truck contained marijuana and no showing of any conspiracy between defendant Watkins and any other person. We note first that defendants waived the right to challenge the denial of the motion made at the close of State's evidence by presenting their own evidence at trial. G.S. 15-173; *State v. Hough*, 299 N.C. 245, 262 S.E. 2d 268 (1980). As to the evidence of conspiracy, defendant Watkins was acquitted of that charge, rendering harmless any error in submitting this count to the jury. The remaining evidence, taken in the light most favorable to State, was clearly sufficient to overcome the motion as to the charge of trafficking by possession of 10,000 pounds or more of marijuana. An accused has possession of narcotics within the meaning of the law when he has the power and intent to control their disposition or use or when the evidence places him in such close juxtaposition to them that a jury could conclude that they were in his possession. *State v. Harvey*, 281 N.C. 1, 187 S.E. 2d 706 (1972); *State v. Roseboro*, 55 N.C. App. 205, 284 S.E. 2d 725 (1981), *cert. den. and appeal dismissed*, 305 N.C. 155, --- S.E. 2d --- (1982). The evidence in the present case meets both tests. Defendants were sufficiently close to the marijuana to raise an inference of possession in that they were riding in and operating a truck which reeked marijuana odor from the storage area. Further, they exhibited knowledge and control of the marijuana by attempting to outrun two police cars and to flee when the truck was stopped by the police.

In their twenty-third assignment of error defendants allege prejudicial error by the trial court in sustaining State's objection to the following question asked of defendant Long and concerning a meeting among defendants and Joann Kraft, arranged by defendant's attorney in May 1981, at which Ms. Kraft was unable to identify Long as one of the people who had been present when Elliott Wade Coleman rented the U-Haul truck: "Now, at any

time, and in your presence and in the presence of Mr. Watkins, did she ever make any gestures of how these people looked that she saw?" Defendants contend that the excluded testimony would have corroborated earlier testimony by Ms. Kraft and was therefore admissible. Whether this is true and whether exclusion of the testimony was prejudicial cannot be determined, however, as the answer to the question is not in the record. *State v. Faircloth, supra.* This assignment is, therefore, overruled.

[9] In assignments twenty-four and twenty-five defendants allege that because the photograph of defendant Watkins used for identification purposes by Ms. Kraft portrayed Watkins in an "in custody background," its admission into evidence and exhibition to the jury was prejudicial error. The picture is not included in the record on appeal as required by App. R. 9(b)(3). Consequently, we cannot determine its admissibility, and these assignments must be overruled. *State v. Jeffries,* 55 N.C. App. 269, 285 S.E. 2d 307 (1982).

[10] After deliberating for three hours the jury returned to the courtroom and reported that they were deadlocked nine to three as to each defendant and that they did not feel that they could reach a verdict with additional time. The court then instructed the jury as follows and asked them to resume deliberations:

> I instruct you that a verdict is not a verdict until all twelve of you agree unanimously what your decision shall be. It is your duty to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to the individual judgment. In the course of your deliberations, each of you should not hesitate to re-examine your own view and change your opinion if it is erroneous; but none of you should surrender your honest conviction as to the weight and effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

At the end of the day the jury still had not reached a verdict although the numerical count had changed. Upon resuming deliberations the next day, unanimous verdicts were reached as to each defendant. In assignment of error twenty-seven defendants argue that the verdicts were coerced as a result of the jurors having been twice required to continue deliberations

after reporting an inability to agree. We find no error. When a jury experiences difficulty in reaching a unanimous verdict, the trial court may ask them to deliberate further in an attempt to reach agreement so long as the court does not express an opinion as to the guilt or innocence of the defendant and does not imply that any juror should surrender his own free will and judgment. *State v. Alston,* 294 N.C. 577, 243 S.E. 2d 354 (1978). The trial court met these requirements in the present case. Further, the court did not unduly coerce the jury by twice requiring them to continue deliberating after difficulties were reported. Following their initial difficulties, the jury continued deliberating until the end of the day at which time they reported that the vote had changed. Under these circumstances, the trial court would have been remiss had it not required the jury to return the next day to continue deliberating. This assignment is overruled.

[11] Following return of the verdicts, defendants moved for a new trial based upon newly discovered evidence consisting of a slip of paper bearing the name and phone number of Elliott Wade Coleman which was found on the person of Felix Morales-Rivero at the time of his arrest. The motion was denied. In their twenty-eighth assignment of error defendants contend that such denial was error because the new evidence "increased the credibility of their stories" that they had had no contact with Coleman, had never met Morales-Rivero prior to 16 December 1980 and had been hired only to transport a truckload of furniture. This argument is without merit and the assignment is overruled. Newly discovered evidence which is merely cumulative or corroborative does not require a new trial. *State v. Person,* 298 N.C. 765, 259 S.E. 2d 867 (1979). Defendants have conceded that their new evidence merely corroborated their own testimony.

[12] Both defendants were sentenced to the sixteen-year minimum prison term and the $200,000 fine required by G.S. 90-95(h)(1)d. Paragraph (6) of that subsection provides that both the minimum prison term and the amount of the fine may be reduced when the person sentenced "has, to the best of his knowledge, provided substantial assistance in the identification, arrest, or conviction of any accomplices, accessories, co-conspirators, or principals if the sentencing judge enters in the record a finding that the person to be sentenced has rendered such substantial assistance." Defendants contend in their twenty-

ninth assignment of error that the trial court erred in failing to find that they had rendered such assistance and reducing their sentences accordingly. The "substantial assistance" to which defendants refer was their willing and voluntary identification at trial of David Horne as the only person they knew to be connected with the U-Haul truck containing marijuana. While it may be true that defendants willingly and voluntarily named David Horne at trial, defendant Long admitted at the presentence hearing that although he had been asked for information by law enforcement officers following his arrest, he had told them that he knew nothing and had given them no information regarding David Horne, who has since died. Watkins did not testify prior to sentencing but stipulated only that he had no other knowledge about the case other than that to which he testified at trial. Upon inquiry by the court, State submitted that it had no information tending to show that defendants had, to the best of their knowledge, provided substantial assistance in the identification, arrest, or conviction of any accomplices, accessories, co-conspirators or principals. On these facts we find no error in the sentences imposed by the trial court.

[13]  In their last two assignments of error defendants contend that application of the punishment provisions of G.S. 90-95(h) in this case constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and Article I, Section 27 of the North Carolina Constitution because the severity of the sentence required by that subsection is disproportionate to defendants' crime. Defendants do not contend that the punishment provisions would be unduly severe in all cases of trafficking in 10,000 pounds or more of marijuana but argue that they are so under the facts of this case because defendants were simply driving a truck which contained more than 10,000 pounds of marijuana in its locked storage compartment to which defendants had no key. We reject this argument. As discussed elsewhere in this opinion, the evidence at trial was sufficient to show that at the time of their arrest defendants had in their possession more than 10,000 pounds of marijuana and were, therefore, guilty of trafficking in marijuana as defined in G.S. 90-95(h)(1). Subparagraph d. thereof authorizes a sentence of imprisonment of not less than sixteen years nor more than forty years and a fine of not less than $200,000 where the trafficking involves 10,000

State v. Long

pounds or more of marijuana. As previously stated, both defendants received the 16-year minimum prison term and the $200,000 fine. Long also received a 16-year maximum prison term; Watkins, an 18-year maximum. These sentences do not exceed statutory limits and, therefore, do not constitute cruel and unusual punishment as to defendants. *See State v. Handsome*, 300 N.C. 313, 266 S.E. 2d 670 (1980); *State v. Mitchell*, 283 N.C. 462, 196 S.E. 2d 736 (1973); *State v. Conard*, 55 N.C. App. 63, 284 S.E. 2d 557 (1981), *cert. den. and appeal dismissed*, 305 N.C. 303 (1982). Further, the United States Supreme Court has recently upheld a sentence of forty years imprisonment and a $20,000 fine for a conviction of possession with intent to distribute nine ounces of marijuana. The Supreme Court held that for crimes classified as felonies and punishable by prison terms, as opposed to death, the length of the sentence is purely a matter of legislative prerogative. *Hutto v. Davis*, --- U.S. ---, 70 L.Ed. 2d 556, 102 S.Ct. ---(1982). We also note that the minimum prison term required by G.S. 90-95(h)(1)d was increased from sixteen years to thirty-five years by amendment effective 1 July 1981. These assignments are overruled.

In the trial below we find

No error.

Judges CLARK and MARTIN (Harry C.) concur.