TYSON, Judge.
Raymond Carl Gilbert ("Defendant") appeals from a guilty verdict for two counts of embezzlement of a charitable organization by an officer pursuant to N.C. Gen. Stat. § 14-92. We find no plain error.
I. Background
Defendant served as president of the Jessie Mae Monroe Elementary School's Parent Teacher Association ("PTA") from 2011 to 2013, while also serving as pastor at Good Shepard Community Church in Brunswick County. The PTA is a local branch affiliated with the North Carolina Congress of Parents and Teachers ("NCPTA"), and is regulated by the "Uniform PTA Bylaws" (the "Bylaws"). Under Article 2 of the Bylaws, the PTA's stated purpose is to: "promote the welfare of children and youth in home, school, community," "raise the standards of home life;" "secure adequate laws for the care and protection of children and youth;" "bring into closer relation the home and the school," and "develop between educators and the general public such united efforts as will secure for all children and youth the highest advantages in ... education." The Bylaws specified:
No part of the net earnings of the organization shall inure to the benefit of, or be distributable to, its members, directors, trustees, officers or other private persons except that the organization shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article 2 hereof . (Emphasis supplied)
The Bylaws also govern the finances and budget of the PTA. The PTA is required to keep permanent books and records to sufficiently establish its gross income, receipts, and disbursements. The records must be available for inspection by an authorized representative of NCPTA at "all reasonable times." The Bylaws further requires the PTA to conduct monthly and annual financial reviews and require expenditures to be consistent with the approved budget. Generally, PTA officers and members may be reimbursed for services rendered or expenses incurred.
As president, Defendant's duties were to "preside at all meetings of the general membership and the board of directors at which [he] may be present," "coordinate the work of officers, the board and the committees of this PTA," "perform such other duties provided by these bylaws or assigned to [him]," "sign all contracts of this local PTA," and "be an ex officio voting member of all committees except the nominating committee."
Upon his election as president, Defendant requested the PTA to change its structure to become a Parent Teacher Organization ("PTO"). PTOs generally have looser funding regulations, while PTAs establish a budget every year and are required to be insured and bonded. Jessie Mae Monroe Elementary School's principal, David Cuppolo, denied Defendant's request because he wanted the PTA to be insured and bonded. Cuppolo further explained he grew concerned following Defendant's request, and became worried "things would not be done appropriately under his leadership."
As Defendant's term concluded, allegations arose of improper use of PTA funds by Defendant. As a result, Cuppolo, with the help of Certified Public Accountant ("CPA") Dale Smith and Brunswick County Sheriff's Detective Carter, instituted an investigation into the receipts and expenditures of the PTA.
The investigation unearthed spending and disbursements by Defendant and other PTA officers that apparently exceeded standards authorized by the Bylaws. The Bylaws authorize the PTA to make expenditures "in furtherance of the general mission of the PTA." According to the Bylaws, financial records were to be audited monthly and annually.
The CPA reviewed the PTA's account and found several problematic transactions, such as transactions with no receipts, unaccounted for gift cards and fundraising certificates, checks for meals, checks reimbursing Defendant personally for gas and travel expenses, and checks issued without the purpose indicated. The CPA testified that several expenditures made by the PTA conflicted with the Bylaws.
Defendant was arrested and charged with embezzlement. Following his arrest, Defendant was administered his Miranda rights and consented to an interview with Detective Carter. Defendant was informed of expenditures that were purportedly not compliant with the Bylaws. Detective Carter told Defendant that he would be held accountable, as the PTA president, for any improper expenditures made by any PTA board member, even if he did not personally request the expenditure. Defendant appeared to be surprised.
Detective Carter also opined that if Defendant was unable to account for the gift cards at issue, "that [was] considered embezzlement." Defendant was subsequently indicted for two counts of embezzlement, one count for each year he was the PTA president, pursuant to N.C. Gen. Stat. § 14-92.
The video of Defendant's interview with Detective Carter was introduced at trial. Outside the presence of the jury, the parties reviewed the entire video with the trial court. Defendant objected to several portions of the video, which the trial court ordered redacted. Defendant sought to exclude testimony by Detective Carter regarding his interpretation of the Bylaws based on relevance. Defense counsel objected, saying he "would like to renew [his] previous objection[.]"
PTA vice president, Melissa Burachynski, testified that money collected by the PTA was "earmarked for educational purposes for the children." The board generally utilized spending "in furtherance of the general mission" of the PTA, which complied with the Bylaws. Burachynski requested "family assistance" checks, used the PTA debit card, signed off on monthly financial reports, and approved the PTA's purchase of shirts bearing the logo of Defendant's church. Although the annual reports appeared to be in order, Burachynski remained "concerned" about some of the expenditures made during the years at issue.
From 2011 to 2013, and in prior years, Elizabeth Smurro had served as the treasurer for the PTA. Aside from Defendant, Smurro was the only other PTA officer with the authority to sign checks on the PTA's behalf during the year's Defendant was president. Smurro testified in exchange for immunity for her actions from prosecution. As PTA treasurer, it was her responsibility to maintain the checkbook and keep financial records. She testified it was not Defendant's responsibility to be the custodian of the financial records; rather, he would simply receive the financial reports from her along with drafts of meeting minutes from the secretary. According to Defendant's statements during his interview with Detective Carter, Smurro had told him that his expenditures were proper based upon audit committee reports.
The State offered the following transactions as evidence tending to show Defendant's guilt: (1) golf shirts embroidered with the name of the church of which Defendant was the pastor, but billed to and paid for by the PTA; (2) PTA reimbursements to Defendant for gas used to attend a family funeral; (3) a digital camera purchased by Defendant with PTA funds; (4) numerous unaccounted for gift cards bought with PTA funds; (5) payments to PTA board members and their families; (6) reimbursements for food at PTA board meetings; and, (6) renewal of the church's Sam's Club Warehouse membership with PTA funds.
Defendant did not put on any evidence in his defense and moved to dismiss the charges for insufficient evidence. Defendant argued the State failed to: (1) produce substantial evidence of fraudulent intent; and, (2) produce substantial evidence that Defendant was the perpetrator of any crime. The trial court denied the motion.
The trial court referred to both the indictment for Defendant's arrest and the controlling statute in composing the jury's instructions. The indictment asserted Defendant "unlawfully, willfully and feloniously did with the intent to embezzle and fraudulently and knowingly misapply" funds. N.C. Gen. Stat. § 14-92 states, in relevant part, an officer or "person having or holding money or property in trust for [an entity]" who "embezzle[s] or otherwise willfully and corruptly use or misapply the same for any purpose other than that for which such money... is held" is guilty of a felony. The trial court, prosecutor, and defense counsel agreed that the jury's instructions should "read just that the defendant embezzled ..."
During deliberation, the jurors submitted a written question to the trial court: "We request clarification of whether we are allowed to consider that the Defendant used poor judgment and did not intend to harm the PTA." In response, the trial court suggested for the jurors to "re-read the instructions" quoted above. Defense counsel agreed and did not object.
The jury found Defendant guilty on both counts of embezzlement by an officer of a charitable organization. Defendant was sentenced to two consecutive terms of 16-29 months, both of which were suspended for 36 months of supervised probation. Defendant appeals.
II. Jurisdiction
An appeal of right lies with this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444 (2017).
III. Issues
Defendant argues the trial court: (1) erred by denying his motion to dismiss for insufficient evidence of his fraudulent intent; (2) committed plain error, by failing to define "embezzlement" and instruct the jury on the mens rea and actus reus elements of his charges; and, (3) abused its discretion by admitting Detective Carter's opinion that Defendant was guilty of embezzlement.
IV. Motion to Dismiss
Defendant contends the trial court erred in denying his motion to dismiss because no evidence tended to show he had acted with fraudulent intent. We disagree.
A. Standard of Review
When reviewing the denial of Defendant's motion to dismiss, this Court reviews the record de novo and, viewed in light most favorable to the State, considers whether there is "substantial evidence of all material elements of the offense." State v. Jackson , 161 N.C. App. 118, 121, 588 S.E.2d 11, 14 (2003) (citation omitted). Evidence is substantial when it can "convince a reasonable mind to accept a conclusion." State v. Curry , 203 N.C. App. 375, 392, 692 S.E.2d 129, 141-42 (2010) (citation omitted). Evidence is not substantial when it only "raise[s] a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it." Id . at 383, 93 S.E.2d at 433.
B. Embezzlement
Pursuant to N.C. Gen. Stat. § 14-92, "[i]f an officer ... or a person having or holding money or property in trust for one of the listed entities, shall embezzle or otherwise willfully and corruptly use or misapply the same for any purpose other than that for which such moneys or property is held, such person shall be guilty of a felony." N.C. Gen. Stat. § 14-92 (2017) (emphasis supplied).
Embezzlement "is the fraudulent conversion of property by one who has lawfully acquired possession of it for the use and benefit of the owner." State v. Cohoon , 206 N.C. 388, 393, 174 S.E. 91, 93 (1934).
C. Felonious Mens Rea
"Fraudulent intent is a necessary element of embezzlement by a public officer." State v. James , 184 N.C. App. 149, 151 646 S.E.2d 376, 378 (2007). Embezzlement does not occur through a "mere act of converting or appropriating property to one's own use." Cohoon , 206 N.C. at 393, 174 S.E.2d at 93. Instead, the State must not only demonstrate appropriation, but it also must demonstrate "that such act was done with a fraudulent purpose or corrupt intent." Id .
The Supreme Court of North Carolina has held that "the element of fraudulent intent [that is] necessary to sustain an embezzlement conviction may be established by evidence of facts and circumstances from which it reasonably may be inferred, as well as by direct evidence." State v. Agnew , 294 N.C. 382, 390, 241 S.E.2d 684, 689, (citing State v. McLean , 209 N.C. 38, 182 S.E. 700 (1935) ), cert. denied , 439 U.S. 830, 58 L.Ed. 2d 124 (1978).
This Court has found substantial evidence of fraudulent intent when a defendant exceeded his authority by taking more coupons than was allowed from his employer without any authorization. State v. Sutton , 53 N.C. App. 281, 287, 280 S.E.2d 751, 755 (1981). This Court has also found substantial evidence that a defendant either "fraudulently, or knowingly and willfully, misapplied or converted funds" by failing to hold the money in the manner as promised. State v. Rupe , 109 N.C. App. 601, 609 428 S.E.2d 480, 486 (1993). Moreover, substantial evidence of fraudulent intent to embezzle has been demonstrated through discrepancies in financial books, a PTA treasurer taking funds to her own home every night, and that treasurer's financial needs. State v. Barbour , 43 N.C. App. 143, 148-49, 258 S.E.2d 475, 479 (1979).
Detective Carter and Principal Cuppolo asserted Defendant had approved the use of PTA funds for purposes other than for those which the Bylaws allowed. The CPA examined the records and documented purported improper items in conflict with the Bylaws. In the CPA's professional opinion, multiple purchases by the PTA under Defendant's leadership were not consistent with the Bylaws. These purchases were entered without explanation in the PTA's financial documents, leaving gaps in the PTA's financial records. Despite these gaps in the financial records, Defendant argues the Bylaws do not define what an improper expenditure is and contends his actions were a "far cry from embezzlement." Similarly, Defendant plausibly exceeded his authority as president of the PTA by using funds for purposes the jury could have found to be outside the scope of the PTA Bylaws for, inter alia , church shirts, personal travel reimbursements, and procuring the $35.00 renewal of the church's Sam's Club Warehouse membership. In doing so, Defendant not only exceeded his authority, but often did so without PTA approval through a vote. The evidence also tended to show Defendant failed to hold PTA funds in reserve as required by the PTA Bylaws. Substantial evidence showed Defendant had the power to control PTA spending, a power he employed to misapply or appropriate PTA funds for personal use. See Sutton , 53 N.C. App. at 287, 280 S.E.2d at 755 (holding that evidence of defendant exceeding his authority in issuing himself coupons "permitted the inference" that the defendant had the requisite fraudulent intent for embezzlement).
Viewed in the light most favorable to the State, substantial evidence was presented to support an inference of Defendant's intent to fraudulently or corruptly use PTA funds for his own benefit. Defendant's motion to dismiss was properly denied.
V. Jury Instructions
Defendant argues the trial court committed plain error by failing to define the term "embezzlement" in the jury charge because the "undefined use of the term 'embezzled' failed to describe the requisite mens rea ." Defendant also contends the trial court committed plain error by failing to set out the actus reus for his embezzlement charges. At the charge conference, the trial court noted it was basing its instructions on N.C. Pattern Jury Instruction Crim. 218.15, "Embezzlement of property by virtue of office or employment" and discussed the terms to use. During the discussion, the following colloquy occurred:
THE COURT: So, what about striking the misapplied and just saying embezzled?
...
[DEFENSE COUNSEL]: That's fine.
...
THE COURT: All right. So, we'll just say embezzled?
...
[DEFENSE COUNSEL]: Yes, sir.
[PROSECUTOR]: Yes, sir.
When the jurors proposed a question to the court, the judge again conferred with both parties to determine the appropriate action and response:
THE COURT: [reading the question] We request clarification on whether we are allowed to consider that the defendant used poor judgement and did not intend, which is underlined, to harm the PTA?
[PROSECUTOR]: Judge, as the trier of fact, they can consider whatever they want other than the fact that he didn't testify.
[DEFENSE COUNSEL]: I kind of agree. I don't know that we really need to respond at all other than to say refer to the jury instructions.
...
THE COURT: So, do you want me to bring them out and tell them something?
[DEFENSE COUNSEL]: I'd say just re-read like the function of the jury and that's the extent.
...
[DEFENSE COUNSEL]: Yeah, we provided you with the instructions and act accordingly.
...
THE COURT: What if I just tell them to read it and -
[PROSECUTOR]: That's fine. That's fine.
[DEFENSE COUNSEL]: Fine with the defense.
Defense counsel's twice-stated agreement, or at minimum acquiescence, to the jury instruction using the term "embezzled" as given arguably amounts to invited error. However, the State does not argue or assert it was invited error on appeal. We review the trial court's omission of a definition for "embezzled" or "embezzlement" for plain error.
A. Standard of Review
By failing to object to the jury instructions, Defendant failed to preserve this issue for normal appellate review. Issues not properly preserved for appellate review are reviewed for plain error. State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012).
[T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]'
State v. Odom , 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted).
This Court "reviews jury instructions contextually and in their entirety. The charge will be held sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed[.]" State v. Blizzard , 169 N.C. App 285, 296-97, 610 S.E.2d 245, 253 (2005) (citation and quotations omitted). This Court has held "it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury." Id .
B. Mens Rea
The trial court instructed the jury on each charge as follows:
All right, the defendant has been charged with embezzlement of funds by a public officer. For you to find the defendant guilty of this offense, the State must prove four things beyond a reasonable doubt: First, the defendant is a public officer of Jessie Mae Monroe Elementary School PTA. Second, that Jessie Mae Monroe Elementary School PTA is a charitable organization. Third, that the defendant embezzled funds between [the dates specified in the indictments] for a purpose other than the purpose for which the funds were held. And fourth, that said money was the property of Jessie Mae Monroe Elementary School PTA held in trust by the defendant pursuant to his public office.
Defendant contends the lack of a definition for "embezzled" in the jury charge failed to instruct the jury on the requisite mens rea . We disagree.
Our appellate courts have long recognized "that it is not error for the court to fail to define and explain words of common usage in the absence of a request for special instructions." State v. Jones , 300 N.C. 363, 365, 266 S.E.2d 586, 587 (1980) (citations omitted). "This rule applies equally to essential elements of the crime charged as well as to other legal terms contained in a charge." State v. Patton , 18 N.C. App. 266, 268, 196 S.E.2d 560, 561 (1973) (citations omitted). Defendant did not request a special instruction defining "embezzled" or "embezzlement" at trial, and, other than in a footnote, the pattern jury instructions do not include a definition. See N.C.P.I. -Crim. 218.15, fn. 4 (June 2010).
Our appellate courts have not previously ruled whether "embezzlement" or "embezzled" are terms of common usage. In other cases, this Court has held terms such as "larceny," "quantum," "altercation," "carnal knowledge," and "corroboration" are terms of such common usage, which do not require trial courts to provide definitions for without requests for special instructions. See State v. Covington, 290 N.C. 313, 336, 226 S.E.2d 629, 645 (1976) (finding no error in trial court not defining "corroboration" or "corroborative evidence" in absence of request for special instruction); State v. Hall, 267 N.C. 90, 92, 147 S.E.2d 548, 549 (1966) (considering "quantum," as term of common usage); State v. Whitley, 213 N.C. App. 630, 632, 713 S.E.2d 505, 507 (2011) (following prior holding recognizing "larceny" as term of common usage); State v. Hart , 44 N.C. App. 479, 484, 261 S.E.2d 250, 253 (1980) (holding "altercation" is word of common usage); State v. Withers , 2 N.C. App. 201, 204, 162 S.E.2d 638, 641 (1968) (holding "carnal knowledge" is a term of common usage).
Under plain error review, we cannot agree to award a new trial based upon any meaningful distinction between the terms of common usage in the cited cases, to find "embezzlement" or "embezzled" are not in common usage. Appellate courts of at least two other jurisdictions have found the meanings of the terms "embezzlement" and "embezzled" to be of such common usage that trial courts are not required to specifically define them. Roper v. Mabry , 551 P.2d 1381, 1385 (Wash. Ct. App. 1976) (holding "the words ['thief,' 'steal' and 'embezzle'] are in common usage and any juror would be aware of their ordinary meaning"); Seay v. State , 356 S.W.2d 681, 685 (Tex. Crim. App. 1961) ("it is not necessary for the court to explain to the jury the meaning of the term[ ] 'embezzlement' ... as [its] meaning[ ] is well understood").
Without any objection or a request for a special instruction, the terms "embezzled," and "embezzlement" as used in the challenged instruction, are not plain error. See Jones, 300 N.C. at 365, 266 S.E.2d at 587.
Additionally, this Court has previously held that where the defendant "fails to cite to any case law or statute which requires the trial court to define [specific] terms during its jury instruction," the defendant has failed to meet his burden under plain error review to award a new trial. State v. Wood, 174 N.C. App. 790, 794, 622 S.E.2d 120, 123 (2005) (where the defendant failed to cite any authority requiring the trial court to define the terms "driving while license revoked," "negligent driving," and "reckless driving," the court did not commit plain error in failing to define those terms). Here, Defendant failed to object to, agreed to the instruction, and has not cited a case or statute requiring the trial court to specifically define the terms "embezzled" or "embezzlement." Defendant's argument under plain error review is overruled.
C. Actus Reus
Defendant also contends the trial court committed plain error by failing to charge the jury on the actus reus for embezzlement. We disagree.
"As a general proposition, the term 'actus reus ' refers to '[t]he wrongful deed that comprises the physical components of a crime.' State v. Barnes , 229 N.C. App. 556, 563, 747 S.E.2d 912, 918 (2013) (quoting Black's Law Dictionary 37 (7th ed. 1999), aff'd , 367 N.C. 453, 756 S.E.2d 38 (2014) ). According to the actus reus requirement, guilt of a criminal offense ordinarily requires proof that the defendant voluntarily committed a physical act." Id.
"As a result, regardless of [w]hether the offense charged be a specific-intent or a general-intent crime, in order to convict the accused the State must prove that he voluntarily did the forbidden act." Id. (citation and internal quotation marks omitted).
The statute under which Defendant was charged, N.C. Gen. Stat. § 14-92, provides, in relevant part:
If an officer, ... shall embezzle or otherwise willfully and corruptly use or misapply the same for any purpose other than that for which such moneys or property is held .... (Emphasis supplied).
N.C. Gen. Stat. § 14-92 does not define "embezzle." In general terms, a person commits "embezzlement" when he: (1) with intent to defraud; (2) converts to his own use; (3) money or property belonging to another; in a situation where (4) the money or property initially came within his possession or control lawfully. See 3 Wayne R. LaFave, Substantive Criminal Law, § 19.6 (2d ed. 2003). Element (1) is the mens rea of "embezzlement." Elements (2), (3), and (4) together, constitute the actus reus .
Here, the trial court instructed the jury, as follows:
For you to find the defendant guilty of this offense, the State must prove four things beyond a reasonable doubt: First, the defendant is a public officer of Jessie Mae Monroe Elementary School PTA. Second, that Jessie Mae Monroe Elementary School PTA is a charitable organization. Third, that the defendant embezzled funds between [the dates specified in the indictments] for a purpose other than the purpose for which the funds were held. And fourth, that said money was the property of Jessie Mae Monroe Elementary School PTA held in trust by the defendant pursuant to his public office. (Emphasis supplied).
Under plain error review, the emphasized portions of the jury charge are not so erroneous to require a new trial for the trial court's failure to instruct the jury of the actus reus for Defendant's embezzlement charges under N.C. Gen. Stat. § 14-92. Defendant's argument is overruled.
D. Ineffective Assistance of Counsel ("IAC")
Defendant asserts he was denied the effective assistance of counsel for his counsel's failure to object to the "flawed instruction." In assessing IAC claims, this Court must determine whether counsel's actions "fell below an objective standard of reasonableness." Strickland v. Washington , 466 U.S. 668, 688, 80 L.Ed. 2d 674, 693 (1984).
Under Strickland , a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance was prejudicial to the defense. Id . at 687 80 L.Ed. 2d at 693. Counsel's performance is deficient where "errors [are] so serious that counsel was not functioning as the 'counsel' guaranteed [to the] defendant by the Sixth Amendment." Id . The defense is prejudiced if "counsel's error [was] so serious as to deprive the defendant of a fair trial, a trial whose result is reliable ." Id . (emphasis supplied).
IAC claims brought on direct appeal are "decided on the merits when the cold record reveals that no further investigation is required." State v. Fair , 354 N.C. 131, 166, 557 S.E.2d 500, 525 (2001), cert. denied , 535 U.S. 1114, 153 L.Ed. 2d 162 (2002). Our Supreme Court has held that whether defense counsel "made a particular strategic decision remains a question of fact, and is not something which can be hypothesized" by an appellate court on direct appeal. State v. Todd, 369 N.C. 707, 712, 799 S.E.2d 834, 838 (2017).
Here, defense counsel's representation of Defendant and conduct cannot be assessed by the "cold record" alone. We dismiss this claim without prejudice to Defendant's right to re-assert his claims in a motion for appropriate relief.
VI. Opinion Testimony by Detective Carter
Defendant asserts it was plain error for the trial court to admit opinion testimony of Detective Carter that Defendant's actions were "considered embezzlement." We disagree.
A. Standard of Review
At trial, portions of the State's exhibit 7, which contained the video-taped interview of Defendant by Detective Carter were redacted based upon objections by Defendant. A specific portion of the video to which Defendant did not object, and was not redacted, featured Detective Carter stating "if we cannot account for these gift cards then that is considered an embezzlement." Before the video was played for the jury, defense counsel stated "I would renew my previous objection, Your Honor."
Defendant failed to provide a specific objection to the challenged portion of the video interview. Where a defendant fails to object to the admission of evidence, "[t]he plain error analysis is the appropriate standard of review." State v. Ridgeway , 137 N.C. App. 144, 147, 526 S.E.2d 682, 685 (2000). Defendant "must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." State v. Roseboro , 351 N.C. 536, 553, 528 S.E.2d 1, 12 (2000) (citation omitted).
B. Opinion Testimony
Detective Carter was not tendered as an expert witness. Rule of Evidence 701 provides "[i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2017). "Testimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." N.C. Gen. Stat. § 8C-1, Rule 704 (2017).
Rule of Evidence 704 "allows admission of lay opinion evidence on ultimate issues, but to qualify for admission the opinion must be helpful to the jury." Mobley v. Hill, 80 N.C. App. 79, 86, 341 S.E.2d 46, 50 (1986) (citing N.C. Gen. Stat. § 8C-1, Rule 701 ). " '[M]eaningless assertions which amount to little more than choosing up sides' are properly excludable as lacking helpfulness under the Rules." Id .
As noted in Rule 704, "a lay witness may testify in the form of an opinion, despite the fact that his opinion may embrace an ultimate issue to be decided by the jury." State v. Owen , 130 N.C. App. 505, 515, 503 S.E.2d 426, 432 (citation omitted), appeal dismissed and disc. review denied , 349 N.C. 372, 525 S.E.2d 188 (1998).
Defendant cites State v. Carrillo to support his argument that the trial court committed plain error in allowing the contested portion of the video to be played. 164 N.C. App. 204, 595 S.E.2d 219 (2004). In deciding Carillo , this Court established the admission of opinion testimony by law enforcement officers, while improper, did not amount to plain error because the defendant failed to demonstrate the jury would have reached a different result had the opinion been excluded. 164 N.C. App. at 211, 595 S.E.2d at 224.
The portion of the video Defendant argues is improper opinion involves a discussion regarding unaccounted for gift cards. Detective Carter states on the video: "if we cannot account for these gift cards then that is considered an embezzlement." Detective Carter did not state, categorically, his opinion that Defendant was guilty of embezzlement, but was speaking hypothetically.
Presuming, arguendo , the challenged portion of the video was inadmissible, Defendant is unable to demonstrate prejudice under plain error review for us to award a new trial. In addition to the gift cards, evidence at trial tended to show Defendant had appropriated PTA funds for personal use, without approval by the PTA on numerous occasions. He ordered shirts and renewed a Sam's Club Warehouse membership for his church, and obtained $200 to reimburse his expenses to attend a family funeral, all using PTA funds without PTA board approval.
The jury could find these transactions were beyond the purposes of the PTA specified within its Bylaws, including: "raise the standards of home life;" "secure adequate laws for the care and protection of children and youth;" "bring into closer relation the home and the school," and "develop between educators and the general public such united efforts as will secure for all children and youth the highest advantages in ... education."
Defendant has failed to demonstrate the jury would have reached a different result had the challenged testimony been excluded. Evidence also tends to show Defendant misapplied PTA funds for purposes other than the goals and purposes of the PTA, including, in part, reimbursement for personal travel, golf shirts for his church, and a digital camera for himself. Defendant's argument is overruled.
VII. Conclusion
The trial court did not err in denying Defendant's motion to dismiss the charges of embezzlement. The State presented substantial evidence to support the inference he had acted with fraudulent intent. The trial court did not commit plain error in instructing the jury on embezzlement of a charitable organization by an officer.
Presuming, arguendo , the trial court erred in admitting the opinion testimony by Detective Carter alluding to embezzlement, this error does not require a new trial under plain error review. Defendant has failed to meet his burden to obtain a new trial. Defendant's claims of ineffective assistance of counsel are dismissed without prejudice for Defendant to pursue those claims via a motion for appropriate relief. It is so ordered.
NO PLAIN ERROR IN PART, DISMISSED WITHOUT PREJUDICE IN PART.
Report per Rule 30(e)
Judges STROUD and ARROWOOD concur.