State v. Atkinson

---

STATE OF NORTH CAROLINA v. HOWARD LEE ATKINSON

No. 7610SC871

(Filed 18 May 1977)

1. **Criminal Law § 75.7—Miranda warnings given — lapse of ten minutes — repetition of warnings unnecessary**

   Where defendant and others were informed of their *Miranda* rights prior to any questioning and prior to any arrests, and defendant stated that he understood his rights and was willing to answer questions, officers who questioned defendant five to ten minutes later and prior to his arrest were not required to repeat the warnings after so short a lapse of time.

2. **Narcotics § 4— possession of heroin with intent to sell — constructive possession — sufficiency of evidence**

   In a prosecution of defendant for possession of heroin with intent to sell and deliver, evidence was sufficient to be submitted to the jury where (1) constructive possession of heroin by defendant could be

inferred from the evidence which showed that heroin was found in a concealed place in his bedroom, that a needle and syringe were found in a man's coat in his closet, and that he admitted that he was a heroin user; (2) constructive possession over glassine bags and tape in a hallway closet near defendant's bedroom could be inferred from the evidence of defendant's tenancy plus evidence which showed that the heroin found in defendant's bedroom was undiluted and would produce, after cutting and packing, about twenty street dosages; and (3) evidence of the quantity of pure heroin and packing materials found in defendant's constructive possession was sufficient to raise an inference of an intent to sell or deliver.

APPEAL by defendant from *McKinnon, Judge.* Judgment entered 1 July 1976 in Superior Court, WAKE County. Heard in the Court of Appeals 6 April 1977.

Defendant pled not guilty to a charge of possession of heroin with intent to sell and deliver.

The evidence for the State tended to show the following: About 10:10 p.m. on 24 January 1976, four officers of the Narcotics Division of the Raleigh Police Department arrived at defendant's apartment with a warrant to search the premises for marijuana. Detective Munday knocked on the door and identified himself to the person who came to the window. He waited a few minutes during which he heard scuffling noises, and then he kicked in the door. Several people were seated in the living room and adjacent kitchen area. Munday and Officer Glover proceeded through the living room down a hallway leading to the two bedrooms. Munday passed the left bedroom, where defendant was sitting on a bed, and entered the right bedroom, where he found defendant's brother, two other men, and some marijuana on a table.

The occupants of the bedrooms were ordered to the living room, were told to remain there and not move about; no one was arrested at that time. In the living room Munday read to the group their *Miranda* rights. Defendant stated that he understood his rights and that he was willing to answer questions. At some point defendant stated that he was the lessee of the apartment and that his brother had been sharing the apartment with him for a couple of months.

Munday then proceeded to search the right bedroom and Sergeant Watson went to the left bedroom where defendant had been found. Watson called Munday to the left bedroom to see

five aluminum packages of white powder that he had found under a chair. The chair sat flush to the floor, and the packages could not be seen unless the chair was raised. There were no coats on the chair. In the room Munday discovered letters addressed to defendant and had him brought to the room. About five to ten minutes after the *Miranda* warnings had been given, defendant was questioned about the packages, but denied any knowledge of them. Munday then searched the bedroom closet containing men's clothes, and in a man's coat he discovered a needle and a syringe. About ten to fifteen minutes after the *Miranda* warnings had been given, defendant was questioned and admitted that the needle and syringe were his, that he was a heroin user, and that he had used some that day. Defendant was then arrested.

Munday next searched a hallway closet across from defendant's bedroom. On the top shelf he found a brown handbag containing numerous small glassine bags and scotch tape. Detective Glover searched a storage space beneath the building and found five syringes in a brown paper bag.

Upon objection to the testimony on defendant's statements in the bedroom a *voir dire* was held. Munday testified that the *Miranda* warnings were given prior to the time anyone was arrested and were not given to defendant a second time in the bedroom. The court found that defendant had been advised of his *Miranda* rights and had waived them.

Chemical analysis of the powder found in defendant's bedroom revealed it was pure heroin, uncut for street use, and would produce about twenty dosages when cut.

Defendant's evidence tended to show the following: On 24 January 1976, he played basketball with Berkley Hodges and others from 11:00 a.m. to 3:00 p.m. From 3:00 p.m. to 5:00 p.m. he played cards and drank beer with Hodges and others at his apartment. From 5:00 p.m. to 10:00 p.m. defendant and Earl Barnes were shopping and visiting. When they returned to defendant's apartment about 10:00 p.m., several people, including defendant's brother, were there playing cards and listening to music. Defendant went to his bedroom, where he found the lights on and some coats on the only chair in the room. He was sitting on the bed when Munday and Glover first came by his room. He joined the others in the living room, was given the search warrant, and informed of his rights. Defendant said

there was nothing in his room. He accompanied Munday to his room when Munday was called to go there, and when questioned denied any knowledge of the five packages of white powder. When Munday opened the door to the bedroom closet, he noticed some girls' coats there; Munday found the needle and syringe in a suit coat that belonged to the brother of defendant's fiancee and that was hanging in the back of the closet apart from defendant's clothes. When questioned defendant denied that he used heroin or that the suit coat was his. The space in which the glassine bags were found was not a clothes closet but a space for the water heater. Defendant denied knowing anything about the bag found in this area. The space in which the bag was found containing the syringes was one of three such dirt areas under the building which could have been used for storage for the six apartments in the building. Defendant had never used it for storage and had never been under there. Among the people in the apartment when defendant returned that evening was a girl and her brother, who later appeared to be working with the police.

The jury found defendant guilty as charged. From judgment imposing imprisonment, defendant appeals.

*Attorney General Edmisten by Associate Attorney William H. Boone for the State.*

*Harris, Poe, Cheshire & Leager by Randolph L. Worth for defendant appellant.*

CLARK, Judge.

[1] Defendant first assigns error to the denial of his motion to exclude from evidence testimony by Detective Munday as to statements made by defendant in the bedroom prior to his arrest. Defendant contends that the officers were required to arrest defendant as soon as the packages were found and to warn him again of his *Miranda* rights. Under *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed. 2d 694, 706 (1966), the critical time at which the warnings must be given is not arrest, but during "custodial interrogation" which was defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." In the present case, defendant, along with others, was told to remain in the living room and not move around. With admirable

caution, Detective Munday then informed the group of their *Miranda* rights, prior to any questioning. Defendant was questioned by Detective Munday some 5 to 10 minutes after receiving the *Miranda* warnings and waiving his rights. It would be a triumph of technicality if the prudent officer were required to repeat the warnings after so short a lapse of time, and we decline to impose such a novel straitjacket upon diligent police officers. We find no merit in this assignment of error.

Defendant next assigns error to the denial of his motion for nonsuit. Defendant particularly contends that there was insufficient evidence that he possessed the glassine bags found in the hallway closet, and that without this evidence, there was insufficient evidence of an intent to sell or deliver.

It is well settled that upon motion for nonsuit the evidence must be considered in the light most favorable to the State. See cases cited in 4 Strong, N. C. Index, Criminal Law § 104 (3d ed. 1976). An accused has possession of contraband when he has both the power and the intent to control its disposition or use. *State v. Summers,* 15 N.C. App. 282, 189 S.E. 2d 807 (1972), *cert. denied,* 281 N.C. 762, 191 S.E. 2d 359 (1972). Such possession may be either actual or constructive. Constructive possession exists when there is no actual personal dominion over the material, but there is an intent and capability to maintain control and dominion over it. *State v. Crouch,* 15 N.C. App. 172, 189 S.E. 2d 763 (1972), *cert. denied,* 281 N.C. 760, 191 S.E. 2d 357 (1972). While it may not be necessary to show that the accused had exclusive possession of the premises where the contraband is found, where possession of the premises is nonexclusive, constructive possession of the contraband by the accused may not be inferred without other incriminating circumstances. *State v. Baxter,* 285 N.C. 735, 208 S.E. 2d 696 (1974) ; *State v. Spencer,* 281 N.C. 121, 187 S.E. 2d 779 (1972) ; Annot., 56 A.L.R. 3d 948 (1974).

[2] In the instant case, constructive possession by the defendant of the heroin could be inferred from the evidence which showed that the heroin was found in a concealed place in his bedroom, that a needle and syringe were found in a man's coat in his closet, and that he admitted he was a heroin user. Constructive possession over the glassine bags and tape in the hallway closet near defendant's bedroom could be inferred from the evidence of defendant's tenancy plus evidence which showed

that the heroin found in defendant's bedroom was undiluted and would produce, after cutting and packaging, about twenty street dosages. Assuming *arguendo* that there was insufficient evidence to show constructive possession of the materials found beneath the apartment building, we conclude that evidence of the quantity of pure heroin and packing materials found in defendant's constructive possession was sufficient to raise an inference of an intent to sell or deliver. See *State v. Baxter, supra.* We find no error in the denial of defendant's motion for nonsuit on the charge of possession with intent to sell or deliver.

No error.

Chief Judge BROCK and Judge VAUGHN concur.