STATE OF NORTH CAROLINA v. SOLOMAN BROWN

No. 8221SC1226

(Filed 1 November 1983)

1. **Narcotics § 4— manufacture of cocaine — sufficient evidence of defendant's guilt**

   The State's evidence was sufficient to support conviction of defendant for manufacturing cocaine where it tended to show that officers searched an apartment then occupied by defendant and two other persons; the officers found on a table in the apartment two plastic packages containing a white powdery substance determined to be cocaine and an array of items used to package and distribute cocaine, including plastic baggies cut in a certain manner, wire ties, cellophane tape, packs of rolling paper, sheets of aluminum foil, a single edge razor blade, and containers of rice and another chemical used to absorb moisture; defendant was only six to eight inches from the table when officers entered the apartment; although the apartment was leased by defendant's brother and no one actually lived there, defendant had a key to the apartment; and each time officers had observed defendant during an investigation which had lasted for some time, he was at the apartment.

---

---

**2. Criminal Law § 173— opening door to evidence**

When, in a prosecution for the manufacture of cocaine, defendant elicited testimony on direct examination of his parole officer that defendant had been on parole for two years and was still on parole, he "opened the door" to the State's cross-examination of the parole officer concerning the conviction for which defendant was on parole, and the trial court properly denied defendant's motion for mistrial made when the parole officer responded that defendant was on parole for possession and sale of heroin. G.S. 15A-1061.

Judge BECTON dissenting.

APPEAL by defendant from *Wood (William Z.), Judge*. Judgment entered 12 March 1982 in Superior Court, FORSYTH County. Heard in the Court of Appeals 2 September 1983.

*Attorney General Edmisten by Special Deputy Attorney General David S. Crump for the State.*

*Yokley and Teeter by D. Blake Yokley for defendant appellant.*

BRASWELL, Judge.

The defendant was convicted under G.S. 90-95(a)(1) for manufacturing cocaine, a Schedule II controlled substance. The questions presented for review concern: (1) whether the evidence was sufficient to establish the possession and the manufacture of cocaine by the defendant; and (2) whether the defendant's motion for a mistrial was properly denied even though the jury was allowed to hear testimony concerning the defendant's previous drug conviction. We have carefully considered each assignment of error and conclude that there was sufficient evidence to support the conviction and that the motion for a mistrial was properly denied.

The evidence for the State tended to show that on 10 September 1981 Detective Jerry Pitman and three other policemen went to Apartment C on 1634 Chestnut Street with a search warrant issued for this apartment in the name of the defendant. They entered the apartment after announcing at the door that they were police officers and that they had a search warrant. Detective Pitman observed Olin Carter in the living room, Nathaniel Small behind the bar, and the defendant in an adjacent room. Detective Pitman immediately crossed the apart-

ment into the room where the defendant was standing. As Pitman entered the room, the defendant, standing six to eight inches from a table, turned towards him.

According to the testimony of Detective Pitman, the following items were on the table or in a box on the table: an open brown paper envelope which contained two plastic packages of a white powdery substance determined by toxicologist, Garland Nelson, to be cocaine; several sandwich-type baggies cut in a manner for use in the packaging and distribution of controlled substances; plastic bags which contained flakes of a green vegetable substance; wire ties used to secure the plastic bags; one roll of cellophane tape which can be used to prevent the plastic bags once filled from unrolling; three packs of rolling paper; two containers of rice and another container of a chemical used to absorb moisture in order to keep powdery controlled substances a higher quality; four sheets of aluminum foil which is commonly utilized as the packaging agent for smaller quantities of powdery controlled substances; a single edge razor blade which is used to chop the powder into a finer substance; and finally a two-inch plastic straw, tapered at one end, which is used to ingest cocaine through the nose. The entire testimony of Detective Pitman was corroborated by the other police officers called.

The defendant was arrested and searched. On his person there was a key to the apartment and over seventeen hundred dollars, but no controlled substances. The other two individuals present were also arrested. A pat-down search to secure the scene revealed in plain view that Small was in possession of marijuana. A routine records check of Carter revealed an outstanding warrant on him for giving worthless checks. Through the search incident to his arrest, Carter was also found in possession of marijuana.

Testimony from the State revealed that the apartment is used as a "drink house," a place used only for parties where alcoholic beverages are served. No person actually lives there, not even the apartment lessee, Lucious Brown, the defendant's brother.

Evidence for the defendant attempted to show that the defendant was not in control of the premises or in possession of the drugs seized. Nathaniel Small testified that the defendant was

by the bar with him when the police entered and not by the table with the drugs. Lucious Brown stated that the defendant did not help pay the expenses of the apartment nor did he ever give him a key to the apartment. Finally, Jay Waller, the defendant's parole officer, was called by the defendant to establish that his residence for the past two years had not been the apartment in question. In view of the fact that Waller, on direct examination, stated that the defendant had been on parole for two years, the State, on cross-examination, asked Waller for what was the defendant on parole. Over the defendant's objection, Waller stated that he was on parole for the sale of the controlled substance heroin and two counts of possession of heroin.

The defendant's motion for a mistrial was denied and he was subsequently found guilty by a jury of manufacturing cocaine.

[1]   The defendant's first and third assignments of error question whether the evidence was sufficient to support a conviction for the manufacture of cocaine. The State standard determining whether there is sufficient evidence to support a criminal conviction requires that there must be "substantial evidence of each essential element of the offense charged." *State v. Smith*, 300 N.C. 71, 78, 265 S.E. 2d 164, 169 (1980). Substantial evidence has been held as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 78-79, 265 S.E. 2d at 169. The federal standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979), states that the appropriate standard of review of a claim of insufficient evidence to support a criminal conviction is whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt. We must apply both standards.

The defendant was convicted of manufacturing a controlled substance. According to G.S. 90-87(15), the term "manufacture" means "the production, preparation, propagation, compounding . . . packaging or repackaging of the substance." As the facts indicate, the applicable portion of this statute includes "packaging and repackaging." *See generally, State v. Childers*, 41 N.C. App. 729, 255 S.E. 2d 654, *disc. rev. denied*, 298 N.C. 302 (1979). There is substantial evidence that cocaine was in fact being "manufactured." Detective Pitman and the other officers found on the table in the apartment an array of items all used as a means to

package and distribute cocaine, from the plastic baggies to the tinfoil, from the cellophane tape to the wire ties. We hold that a rational trier of fact had sufficient evidence to convict one of manufacturing cocaine. The question in this case then becomes who was the manufacturer, and this question can be answered by determining who was in actual or constructive possession of the cocaine and the manufacturing materials. Although the defendant was not convicted of a separate offense of possession of a controlled substance, his conviction of manufacturing cocaine necessarily depends on his possession of the controlled substance.

There was no evidence at trial by any of the police officers that the defendant was in physical possession of the items on the table. Basically, the testimony places the defendant inside the house and very close to the table. Detective Pitman stated that when he entered the room that the defendant was six to eight inches from the table and that the cocaine found in the brown envelope was a foot from his hand. Thus, the establishment of possession, and in turn, the basis for the manufacturing conviction, rests on his constructive possession of the cocaine and the other packaging devices.

The general rule states that "[c]onstructive possession exists when there is no actual personal dominion over the material, but there is an intent and capability to maintain control and dominion over it." *State v. Atkinson*, 33 N.C. App. 247, 251, 234 S.E. 2d 770, 773 (1977). We hold that the defendant, standing in close proximity to the table and being the only person in the room, had the capability of exercising control over the cocaine. There was sufficient evidence before the jury in which the intent of the defendant could be inferred from the circumstances. Detective Pitman testified in detail that all of the items found on the table with the cocaine were in some way used to package and distribute controlled substances. In *State v. Long*, 58 N.C. App. 467, 475, 294 S.E. 2d 4, 10 (1982), the court added that "[a]n accused has possession of narcotics within the meaning of the law when he has the power and intent to control their disposition or use or when the evidence places him in such close juxtaposition to them that a jury could conclude that they were in his possession." Surely, the evidence provided places the defendant in such a position that even though he was not physically in custody of the cocaine or

the other items, a jury could conclude that he was nevertheless constructively in possession of them.

In *State v. Harvey*, 281 N.C. 1, 13, 187 S.E. 2d 706, 714 (1972), the court held that the defendant's motion to dismiss was correctly overruled when "the State's evidence placed defendant within three or four feet of the marijuana within his home. No one else was in the room. This evidence supports a reasonable inference that the marijuana was in defendant's possession." In the present case the defendant was also alone in the room and within a closer distance to the controlled substance. The fact that the defendant in our case was not the lessee of the apartment or that other persons also had access to the contraband does not exonerate the defendant because exclusive possession of the contraband on the premises where the contraband is found is not required. *State v. Roseboro*, 55 N.C. App. 205, 209, 284 S.E. 2d 725, 727 (1981), *disc. rev. denied*, 305 N.C. 155, 289 S.E. 2d 566 (1982); *State v. Atkinson, supra*, at 251, 234 S.E. 2d at 773. "[W]here possession of the premises is nonexclusive, constructive possession of the contraband by the accused may not be inferred without other incriminating circumstances." *Id.* Other incriminating evidence which shows the extent of the defendant's control over the premises includes the testimony that the defendant had been under investigation for some time, that each time he was observed by the police he was seen at 1634 Chestnut Street, the apartment where the cocaine was found, and that the defendant had a key on his key ring to this apartment. Therefore, there was substantial evidence before the jury indicating the defendant's constructive possession of the cocaine and the other items used for manufacturing the controlled substance. With possession established, there was substantial evidence to justify rational triers of fact to find the defendant guilty of manufacturing cocaine beyond a reasonable doubt.

[2] The defendant words his second question presented for review as follows: "Whether the trial court should have granted a mistrial on the grounds that testimony was allowed before the jury by defendant's probation officer of defendant's previous conviction when defendant had not taken the stand or put his character in issue?" We answer no in the context of the way the question and answer were given under the doctrine of evidence known as opening the door.

At trial, the defendant called Jay Waller, his parole officer, for the purpose of establishing that his address was not 1634 Chestnut Street. On direct examination, Mr. Waller stated that the defendant lived at 3901 Logan Lane, and related that "[a]t the present time, I'm seeing him once every three months. That's the current supervision level he's under. And he's been on parole now approximately two years. And I would, I don't know the exact number, but I have seen him several times at that address." On cross-examination the following exchange occurred.

Q. Is he still under parole with you?

A. Yes, sir.

Q. What for?

[DEFENSE COUNSEL]: Objection.

COURT: Overruled.

\*     \*     \*     \*

COURT: I'm not going to let him go into any other case except the one he's on parole for.

\*     \*     \*     \*

Q. Mr. Waller, What's he on parole for?

A. He is on parole for sale of the controlled substance heroin and two counts of possession of the controlled substance heroin.

The defendant asked for the answer to be stricken, then moved for a mistrial. Both motions were denied.

According to G.S. 15A-1061, a mistrial should be declared "upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." Basically, the determination whether the evidence causes substantial or irreparable prejudice to the defendant's case is within the discretion of the trial judge. *State v. McCraw*, 300 N.C. 610, 268 S.E. 2d 173 (1980). The scope of our review therefore is limited to whether in denying the motion for a mistrial there has been an abuse of judicial discretion.

When evidence which would have been excluded under one rule of admissibility is nevertheless made admissible and competent under a different and overriding rule, the rules ought first to be examined. When a defendant has neither taken the stand and testified nor independently placed his character in evidence through other witnesses, it is recognized to be prejudicial and reversible error to allow the State to introduce evidence of any prior convictions of the defendant. In that context we do not recognize it as either impeachment evidence or as being within the scope of cross-examination of other witnesses to allow knowledge of any prior criminal record to be heard. However, North Carolina has long recognized in trial practice a doctrine known as "opening the door." Some text writers and other jurisdictions call it "curative admissibility." 1 Wigmore, Evidence 3d, § 15, Curative Admissibility. In a note commenting upon the rules of curative admissibility, *Evidence — Curative Admissibility*, 35 Mich. L. Rev. 636, 639 (1937), the author defines our phrase: "Another is the familiar doctrine of 'opening the door'; it is said that if one party without objection first introduces certain testimony the door is opened and he cannot later complain of the other party's similar evidence." The author further comments that the reason the courts do admit rebutting evidence is because "the emphasis" is switched and is placed "on the original party's action in offering the evidence, by which he waived future objection to that class of evidence." *Id.* at 639. The theory, as gleaned from *Kelley v. Hudson*, 407 S.W. 2d 553, 556 (Mo. 1966), is that "[t]he party who opens up an improper subject is held to be estopped to object to its further development [citation omitted] or to have waived his right to do so." The Indiana Supreme Court said it this way: "If a party opens the door for the admission of incompetent evidence, he is in no plight to complain that his adversary followed through the door thus opened." *Perkins v. Hayward*, 124 Ind. 445, 449, 24 N.E. 1033, 1034 (1890). In Iowa, the court gave as its rationale for the doctrine: "This was clearly a continuation of the subject introduced by the defendant, and objection cannot now be raised by the same party to the competency of the evidence." *Artz v. The C., R.I. & P.R.R. Co.*, 44 Io. 284, 286 (1876). *Wigmore, supra*, at 309, sums up the controlling principles for having a curative admissibility doctrine, by declaring, "the emphasis is placed upon the original party's voluntary action in offering the evidence by which he virtually waived future objection to that class of facts."

In the case before us it was the defense counsel himself on direct examination of his own witness who elicited the testimony that the defendant was in fact on parole and that he had been on parole for two years. There was no motion by defense counsel to strike the answer as being unresponsive, or otherwise objectionable. Likewise, the defense counsel made no objection or motion to strike to the State's going into this same subject matter when the district attorney asked, "Is he still under parole with you," and received a "yes" answer. We hold that in this context the defense counsel "opened the door" to the facts surrounding the defendant's parole, and the State could properly pursue a subject voluntarily introduced by the defense and which subject then fell within the scope of cross-examination once the door had been opened. As said in *Sisler v. Shaffer*, 43 W. Va. 769, 771, 28 S.E. 721, 721 (1897), "[S]trange cattle having wandered through a gap made by himself, he cannot complain." *See Johnson v. Massengill*, 280 N.C. 376, 383, 186 S.E. 2d 168, 174 (1972). *See also State v. Parker*, 45 N.C. App. 276, 262 S.E. 2d 686 (1980) (on scope of cross-examination).

In *State v. Neely*, 4 N.C. App. 475, 477, 166 S.E. 2d 878, 879 (1969), the defense counsel asked a State's witness on cross-examination if he was scared of the defendants. The witness answered, "Yeh. If anybody had a record like them, you'd be scared of them too." The defendant's motion to strike was denied even though the defense counsel had not intended to put the defendant's character into issue and the defendant's criminal record, usually inadmissible, was before the jury. The court declared that "[t]he question asked by defense counsel was calculated to elicit the very response which was given. [The witness] had a right to explain his answer and defense counsel 'opened the door' for such an explanation." *Id.* In the case at bar, the defense counsel purposely called Waller to establish the defendant's residence. This witness testified freely concerning the defendant's parole with no admonishment from defense counsel. "Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially." *State v. Albert*, 303 N.C. 173, 177, 277 S.E. 2d 439, 441 (1981). Once the defense witness had begun discussing the defendant's

parole, the State could properly ask for what the defendant was on parole. To call the defendant's parole officer in the first place may have been ill-advised trial strategy, but the "[d]efendant cannot now successfully contend that the trial judge committed prejudicial error because he did not, *ex mero motu*, object to experienced counsel's plan of trial." *State v. Waddell*, 289 N.C. 19, 25, 220 S.E. 2d 293, 298 (1975), *modified*, 428 U.S. 904, 96 S.Ct. 3211, 49 L.Ed. 2d 1210 (1976). *See also State v. Chatman*, 308 N.C. 169, 177, 301 S.E. 2d 71, 76 (1983).

As in *Waddell*, the defense counsel, in calling Waller, invited the alleged error "by eliciting evidence . . . which he might have rightfully excluded if the same evidence had been offered by the State." *State v. Waddell, supra.* It is important to note that the trial judge only admitted testimony concerning the conviction for which the defendant was on parole and no other evidence pertaining to his character or criminal record was allowed. Thus, the defendant was harmed only to the extent that he himself opened the door to the subject matter of his parole. Because the defendant opened the door to this particular conviction, this invited error could not be grounds for a mistrial. In any event, a motion for a mistrial will be granted when the defendant has suffered "substantial and irreparable prejudice," G.S. 15A-1061, and "[a] defendant is not prejudiced . . . by error resulting from his own conduct." G.S. 15A-1443(c). We hold that the trial judge did not abuse his discretion in denying the defendant's motion for a mistrial.

In summary, we hold that there was substantial evidence present to allow a rational trier of fact beyond a reasonable doubt to convict the defendant of manufacturing cocaine. Secondly, because the defendant opened the door to the subject of his parole, no error was committed by the admission of the answer of his being on parole for a drug conviction.

No error.

Judge JOHNSON concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

Believing that defendant's motion for mistrial should have been granted, I dissent.

The majority's reliance on the following two legal proposi-
tions to uphold the trial court's denial of defendant's motion for
mistrial is misplaced: (1) "Defendant cannot invalidate a trial by
introducing evidence or by eliciting evidence on cross-examination
which he might have rightfully excluded if the same evidence had
been offered by the State." *State v. Waddell*, 289 N.C. 19, 25, 220
S.E. 2d 293, 298 (1975), *death sentence vacated*, 428 U.S. 904, 49
L.Ed. 2d 1210, 96 S.Ct. 3211 (1976) (*See also, State v. Chatman*,
308 N.C. 169, 301 S.E. 2d 71 (1983); *Johnson v. Massengill*, 280
N.C. 376, 186 S.E. 2d 168 (1972); and *State v. Neely*, 4 N.C. App.
475, 166 S.E. 2d 878 (1969).); and (2) "Where one party introduces
evidence as to a particular fact or transaction, the other party is
entitled to introduce evidence in explanation or rebuttal thereof,
even though such latter evidence would be incompetent or irrele-
vant had it been offered initially." *State v. Albert*, 303 N.C. 173,
177, 277 S.E. 2d 439, 441 (1981).

Courts should look first to the facts of a particular case
before applying broad propositions of law which themselves are
exceptions to the general rule that incompetent evidence should
not be placed before the jury. In this case, the prejudicial infor-
mation which the defendant sought to exclude—that he was "on
parole for the sale of the controlled substance heroin and two
counts of possession of controlled substance heroin"—was elicited
by the State, not by defense counsel. Significantly, it was defense
counsel in *State v. Waddell, Johnson v. Massengill*, and *State v.
Neely*, who, while cross-examining the witness, got a response
which "he might have rightfully excluded if the same evidence
had been offered by the" other side. *State v. Waddell*, 289 N.C. at
25, 220 S.E. 2d at 298. Therefore, the North Carolina cases cited
by the majority are inapposite and do not warrant application of
an "open door" or invited error policy.

Further, although defense counsel, for reasons I have yet to
discern, called defendant's parole officer "for the purpose of
establishing that his address was not 1634 Chestnut Street," ante
p. 7, no part of the parole officer's testimony needed to be ex-
plained or rebutted. What explanation or rebuttal is necessary to
the parole officer's testimony that defendant lives at 3901 Logan
Lane and that he, the parole officer, has seen the defendant
several times at that address during the approximately two years
defendant has been on parole? The State was not prejudiced by

this testimony; in fact, this testimony more likely than not helped the State more than it helped defendant. This case, therefore, is distinguishable from *State v. Albert* and from *State v. Small*, 301 N.C. 407, 272 S.E. 2d 128 (1980) in which the defendants' direct examination testimony gave the jury the "false impression that the [S]tate had refused to accept his offer to submit to a polygraph examination." 301 N.C. at 436, 272 S.E. 2d at 146. As our Supreme Court said in *State v. Albert*:

> Here, defendant on direct examination had testified that he told the officers he would be willing to take a lie detector test. This testimony, unexplained, could well lead the jury to believe that the State had refused to give defendant such a test, or that defendant had taken the test with favorable results which the State had suppressed. *Under such circumstances*, the law wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself.

303 N.C. at 177, 277 S.E. 2d at 441 (emphasis added).

The circumstances in this case are clearly different from the circumstances in *Small* and *Albert*. They are also different from the circumstances facing "text writers and other jurisdictions," *ante* p. 9: the State's evidence in this case was not of the same "class" or "similar"; it was not "rebutting evidence"; and testimony that a witness knows where defendant lives because the witness is defendant's parole officer is not "an improper subject."

Was the denial of defendant's motion for a mistrial prejudicial? Yes. Significantly, no controlled substances were found on defendant's person, although drugs were found on the persons of two other people in the apartment. This case involves constructive possession of controlled substances found in an uninhabited apartment in which defendant had no possessory interest. Moreover, there was a hotly contested dispute between police officers and defendant's witness concerning how close defendant was to the table upon which the drugs had been placed. The police officers testified that defendant was standing six to eight inches from the table. Defendant's witness testified that defendant was not in the room in which the drugs were found. Thus, evidence that defendant was on parole, not for minor or non-drug-related

offenses, but for sale of heroin and two counts of possession of heroin, was highly prejudicial in this controlled substance case. I, therefore, vote for a new trial.