STATE OF NORTH CAROLINA v. HOWARD BEAVER

No. 8530SC265

(Filed 19 November 1985)

**Narcotics § 4.4— manufacturing marijuana—constructive possession—evidence insufficient**

A charge of manufacturing marijuana should have been dismissed for insufficient evidence that defendant had constructive possession of marijuana drying in a barn and growing in patches where the distance from the barn and marijuana patches to the house ranged from seventy-five to three hundred yards; there was no evidence that defendant owned the land upon which the barn or the patches were located; evidence was introduced that someone other than defendant or his mother owned the land; there was no evidence of defendant's ownership or constructive possession of the barn and marijuana fields; no evidence placed defendant in the barn, the marijuana patches or their environs at any time near his arrest; the paths leading from the house to the barn and patches were not the exclusive means by which those places could be reached; and statements by defendant and his mother immediately after his arrest, assuming admissibility, were too general and too ambiguous to constitute any evidence of defendant's guilt. G.S. 90-95(a)(1) (Supp. 1983).

Chief Judge HEDRICK dissenting.

APPEAL by defendant from *Downs, Judge.* Judgment entered 20 July 1984 in Superior Court, CHEROKEE County. Heard in the Court of Appeals 14 October 1985.

*Attorney General Thornburg, by Assistant Attorney General Lucien Capone, III, for the State.*

*Jones, Key, Melvin & Patton, P.A., by R. S. Jones, Jr., and Chester Marvin Jones for defendant appellant.*

State v. Beaver

BECTON, Judge.

I

Defendant was convicted by a jury of manufacturing a controlled substance under N.C. Gen. Stat. Sec. 90-95(a)(1) (Supp. 1983). (Three related charges were dismissed at the close of the State's evidence.) A subsequent motion for appropriate relief was denied. Defendant appeals the judgment entered on the verdict, contending that it was error to deny his motion to dismiss the manufacturing charge made at the close of all the evidence; that the trial court erroneously admitted statements of defendant's mother made contemporaneously with his arrest, and his own in-custody statements to his mother; and that it was error to deny his motion for appropriate relief. We conclude the defendant's motion to dismiss should have been granted, and we reverse. Therefore, we do not address the remaining assignments of error.

II

The State's evidence tended to show that on 28 July 1982, the North Carolina State Bureau of Investigation (S.B.I.) and the Cherokee County Sheriff's Department (Sheriff's Department) were involved in an aerial marijuana eradication program. A nine-person ground crew composed of special agents and sheriff's deputies followed the directions of a pilot, and turned off a rural unpaved road to the residence of defendant and his mother. The defendant came around from the rear of the house. He was wearing green coveralls and was sweating. A member of the ground crew informed defendant that some marijuana plants had been observed from the air in the vicinity behind the house and requested defendant's permission to cross the yard and pull them up. Defendant told them his mother would not appreciate their driving through her yard but directed them to an old logging road off the rural unpaved road by which the plants could be reached. The ground crew took the logging road and found marijuana drying in a barn located approximately seventy-five yards from the house. The crew observed a path leading from the barn to the house. The crew also discovered five "patches" of marijuana plants. One patch was located about 125 yards from the house; the other four patches were located about 300 yards from the house. A number of freshly mowed paths led from the house to the gen-

eral direction of the patches. Also located in the vicinity were a corn patch and a vegetable garden.

While the ground crew was examining the marijuana patches, the defendant came back outside. The ground crew placed him under arrest and transported him in their truck back to the house. Defendant's mother was standing on the front porch. Two members of the ground crew walked up to the house and informed her they had just arrested her son for manufacturing marijuana. Defendant's mother began to cry, and at her request she and the two crew members walked down to the truck so that she could speak to her son. Two crew members testified that when they got to the truck defendant's mother said that she had tried for forty-five years to raise him right and that she told him if he messed with this stuff that it would get him in trouble. One crew member testified that defendant then told his mother to "hush" and not say anything to the officers. The other testified that he said, "Shut up, Mamma, shut up. They hadn't caught me in the fields. They hadn't caught me doing anything. Shut up."

Defendant put on evidence. He denied that he or his mother owned the land where the barn and the marijuana patches were located. He also testified that at that time he was not living at his mother's home, but only visited there on occasion.

### III

Defendant contends that the evidence was not sufficient to support his conviction and that his motion to dismiss should have been granted.

A motion to nonsuit in a criminal case requires consideration of the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. . . . Contradictions and discrepancies are for the jury to resolve and do not warrant nonsuit. . . . All of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is considered by the Court in ruling upon the motion. . . . If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that defendant committed it, a case for the jury is made and nonsuit should be denied. . . .

*State v. McKinney*, 288 N.C. 113, 117, 215 S.E. 2d 578, 581-82 (1975) (citations omitted).

Defendant was convicted of manufacturing a controlled substance. It is not disputed that marijuana was in fact being manufactured. The dispositive question in this case is whether substantial evidence was adduced that defendant was the manufacturer, which question may only be answered by determining whether defendant was in actual or constructive possession of the marijuana. *See State v. Brown*, 64 N.C. App. 637, 640-41, 308 S.E. 2d 346, 348-49 (1983), *aff'd*, 310 N.C. 563, 313 S.E. 2d 585 (1984). The State does not contend that defendant had actual possession of the marijuana; rather, its argument is based upon a theory of constructive possession. "The doctrine of constructive possession applies when a person lacking actual physical possession nevertheless has the intent and capability to maintain control and dominion over a controlled substance." *State v. Baize*, 71 N.C. App. 521, 529, 323 S.E. 2d 36, 41 (1984), *disc. rev. denied*, 313 N.C. 174, 326 S.E. 2d 34 (1985) (identifying factors to be considered in determining constructive possession: "No single factor controls.").

The evidence in the instant case is distinguishable from that in cases where there was a sufficient showing of constructive possession and analogous to that in cases where there was an insufficient showing. The distance from the barn and marijuana patches to the house, ranging from 75 yards (225 feet) to 300 yards (900 feet), was considerably more than the distance between defendant's residence and the location of the controlled substance in other cases. *See State v. Wiggins*, 33 N.C. App. 291, 235 S.E. 2d 265, *cert. denied*, 293 N.C. 592, 241 S.E. 2d 513 (1977) (no constructive possession of marijuana plants growing 55 feet and 145 feet from defendant's trailer); *cf. State v. Roten*, 71 N.C. App. 203, 321 S.E. 2d 557 (1984) (constructive possession of marijuana 282 feet from house where pipe connected to garden hose ran directly from house to marijuana plants). There was no evidence that defendant owned the land upon which the barn or the marijuana patches were located. In fact, positive evidence was introduced that someone other than defendant or his mother owned the subject land. *Cf. State v. Sanderson*, 60 N.C. App. 604, 300 S.E. 2d 9, *disc. rev. denied*, 308 N.C. 679, 304 S.E. 2d 759 (1983) (undisputed that defendant owned or leased land). There was no evidence of

defendant's ownership or constructive possession of the main building from which an inference of constructive possession of the barn and marijuana fields could be made. *Cf. State v. Williams*, 307 N.C. 452, 298 S.E. 2d 372 (1983) (evidence that defendant's name on mailbox outside residence near outbuilding where heroin found, and that three bills addressed to defendant and bottle of pills bearing his name found therein supported his constructive possession of residence). No evidence placed defendant in the barn, the marijuana patches or their environs at any time near his arrest. *Cf. State v. Spencer*, 281 N.C. 121, 187 S.E. 2d 779 (1972) (marijuana found in shed in pigpen 25 yards from defendant's residence; court deemed it significant that defendant seen in outbuildings near home on numerous occasions); *State v. Sanderson* (evidence that defendant cultivated land).

The paths leading from the house to the barn and patches were not the exclusive means by which these places could be reached; there was undisputed evidence that the patches could also be accessed by the logging road which branched off the rural unpaved road in front of the residence. In *State v. Spencer, State v. Roten,* and *State v. Owen,* 51 N.C. App. 429, 276 S.E. 2d 478 (1981), *cert. denied,* 305 N.C. 154, 289 S.E. 2d 382 (1982), cases in which the Court found constructive possession, the path or paths from defendant's residence were the exclusive means by which the marijuana plants could be reached. Instead, our facts resemble those of *State v. Payne,* 73 N.C. App. 154, 325 S.E. 2d 654 (1985), where the marijuana fields were located from 250 to over 1,000 feet from the house "sometimes occupied" by defendants, and there were "several paths and roads winding through the land surrounding the fields." The *Payne* Court held that the motion to dismiss the manufacturing charge should have been granted.

The only other evidence arguably linking defendant to the marijuana were the statements made by defendant's mother immediately after his arrest and his response thereto. Assuming, *arguendo*, the admissibility of these statements, we believe that they are too general and too ambiguous to constitute any evidence—let alone substantial evidence—of defendant's guilt.

The weakness of the State's case is highlighted in the following excerpts from an exchange between the prosecutor and the

trial judge, occurring when defendant made his motion to dismiss at the close of the State's evidence.

COURT: . . . Who owns the barn?

MR. PATTON: Well, I don't know who owns the barn.

COURT: I don't either.

MR. PATTON: I have no evidence as to who owns the barn. I have evidence this is part of the area, the paths going to and from it, Your Honor; the fact that there is no other residences there. I have no survey—

COURT: Then why isn't the mother charged?

MR. PATTON: I propose to call the statements by the mother and the response by the son.

COURT: So in other words, I'm to instruct the jury on this case that the only thing they've got to consider as far as guilt of this Defendant is credibility of the mother who is not here, no one's seen her and just to simply judge the credibility of some statements that she made in some area of the yard that day?

MR. PATTON: And his response to them.

COURT: And that's enough to go [to] this jury on on [sic] this case?

MR. PATTON: Your Honor, I submit that it is.

\* \* \*

COURT: Where is the evidence that puts this Defendant in patch one, two, three, four, five or the barn—where's the evidence?

MR. PATTON: Your Honor, the evidence is that this defendant said that he and his mother lived there. He had been in a working position, a sweating position when they say him. There was no other farming activity apparent there; even the potato digging was two days old.

COURT: . . . The closest patch you've got is a hundred and twenty-five yards away. That's more than a football field. . . . And that's the closest patch. The other one was two hun-

dred and fifty to three hundred yards away, by estimation of your witness.

*   *   *

MR. PATTON: Your Honor, the only thing that I can say is that this is a contiguous farm and the paths, the mowed paths where they lead from and where they lead to indicate a pattern of activity.

COURT: Where is there any evidence that those patches are on this woman's or this man's land?

MR. PATTON: I don't think the ownership of the land has any materiality there. I can grow marijuana on your land and that doesn't make you guilty.

COURT: That's exactly right, but they've got to find you and connect you with it.

MR. PATTON: That's exactly right and—

COURT: Where is his just position in this case?

MR. PATTON: And I say his just position as to how with the paths leading to and from that house leading to the barn and his physical condition on the day in question—

COURT: What physical condition?

MR. PATTON: That he was sweating and wearing coveralls and a headband—

COURT: That makes somebody guilty of growing marijuana?

In conclusion, we find that sufficient evidence has not been adduced to enable a jury to rule on the issue of defendant's guilt on the charge of manufacturing marijuana, and we hold that the charge should have been dismissed.

Reversed.

Chief Judge HEDRICK dissents.

Judge PARKER concurs.

Chief Judge HEDRICK dissenting.

In my opinion, the evidence, when considered in the light most favorable to the State, is sufficient to require submission of the case to the jury as to whether the defendant was guilty of manufacturing marijuana, and to support the verdict rendered by the jury.