STATE v. LANE

[119 N.C. App. 197 (1995)]

━━━━━━━━━━

STATE OF NORTH CAROLINA v. LLOYD STEPHEN LANE

No. 9416SC657

(Filed 6 June 1995)

1. **Criminal Law § 107 (NCI4th)— inmate—crack—fingerprints not available from cellophane bag—testimony not disclosed**

There was no error in the prosecution of an inmate for possession of a controlled substance where defendant filed a motion for discovery but the State did not disclose the testimony of a detective on fingerprints. The detective did not conduct any tests in preparation for the trial and did not testify regarding any test results or examinations specific to this case; he formulated his opinion about the cellophane bag based on an examination made for the first time at trial.

**Am Jur 2d, Depositions and Discovery §§ 447-449.**

Right of accused in state courts to have expert inspect, examine, or test physical evidence in possession of prosecution—modern cases. 27 ALR4th 1188.

Reports of tests, experiments, or analyses as subject to discovery by defendant under Rule 16 of Federal Rules of Criminal Procedure. 110 ALR Fed. 313.

2. **Evidence and Witnesses § 2908 (NCI4th)— fingerprint expert—DNA testimony—door opened by defendant**

There was no error in the prosecution of an inmate for the possession of crack cocaine where a detective testifying as an expert on fingerprint matters was questioned about DNA testing of saliva. The witness discussed DNA analysis only upon cross-examination by defendant; since defendant opened the door, the State appropriately clarified DNA testing procedures by asking follow-up questions. Moreover, the trial court sustained defendant's objections when the State asked a question on DNA testing that was clearly outside the scope of expertise of the witness.

Am Jur 2d, Witnesses § 830.

3. **Narcotics, Controlled Substances, and Paraphernalia § 180 (NCI4th)— inmate—possession of crack—instruction on constructive possession—evidence of direct possession**

There was no error in the prosecution of an inmate for possession of a controlled substance in the court's instruction on constructive possession where the evidence included incriminating circumstances that would allow a jury to conclude through circumstantial evidence that defendant had actual possession of the crack cocaine. Actual possession may be shown by direct evidence or inferred from the circumstances and the court properly instructed the jury about actual possession.

Am Jur 2d, Drugs, Narcotics, and Poisons § 45.

Prosecutions based upon alleged illegal possession of instruments to be used in violation of narcotics laws. 92 ALR3d 47.

4. **Criminal Law § 468 (NCI4th)— possession of controlled substance—prosecutor's closing arguments**

There was no error in the prosecution of an inmate for possession of crack cocaine where the prosecutor argued that "DNA testing I submit to you is not an inexpensive type test. And I'd

submit to you that's the type of test that you use when you have rape. . . ." This statement does not constitute an injection of experience or personal belief as to the truth of the evidence, nor does it involve matters that were outside the record.

**Am Jur 2d, Trial § 496.**

5. **Criminal Law § 468 (NCI4th)— inmate—possession of crack—closing argument—jury misled**

The trial court did not err in the prosecution of an inmate for possession of crack cocaine by sustaining the prosecutor's objection to defense counsel's closing argument that defendant can't call an expert from Raleigh. Defendant misled the jury because defense counsel has the right to call experts and subpoena potential witnesses himself.

**Am Jur 2d, Trial § 496.**

Appeal by defendant, Lloyd Stephen Lane, from judgment entered 1 March 1994 by Judge Joe Freeman Britt in Robeson County Superior Court. Heard in the Court of Appeals 28 February 1995.

*Attorney General Michael F. Easley, by Associate Attorney General Sarah A. Fischer, for the State.*

*William L. Davis, III for defendant appellant.*

McGEE, Judge.

In November 1992, Lloyd Stephen Lane was incarcerated in the Robeson County Department of Correction. The morning of 4 November, defendant and two other inmates were scheduled to leave the prison on work detail. After defendant was seated on a transport van, one of the other inmates received permission to return to the prison to obtain cold medication from the prison nurse. The officer in charge, Sergeant Byron Walters, searched the inmate before allowing him to re-enter the prison.

Defendant also requested to return to the prison to obtain medication from the nurse. As defendant walked toward the building, he attempted to bypass Sergeant Walters. The sergeant called defendant back outside the prison gate and began to search him. The defendant pushed the sergeant's hand away when the sergeant felt around defendant's left pants pocket. Defendant then took something clear out of his pocket and put it into his mouth. Sergeant Walters ordered

the defendant to hand over the object but the defendant did not comply and began walking away from the sergeant towards the van. Sergeant Walters followed him and repeatedly ordered him to give up the object he had placed in his mouth. At the rear of the van, the defendant stopped and ran his hand back over his mouth. He brought his hand back down to his side and stepped over to his left. Sergeant Walters looked on the ground and found a "little, clear, plastic cellophane bag" containing a hard rock substance. When the sergeant picked up the bag, it felt moist to the touch. Sergeant Walters asked the defendant if the bag belonged to him and if he had anything else in his mouth. Defendant took a brown tablet from his mouth and said it was a vitamin.

The defendant asked Sergeant Walters if they could speak in private. He asked the sergeant to "give him a break" because his mother "would have a heart attack" if she found out about it. Sergeant Walters refused and turned the plastic bag over to the prison contraband officer. The bag and its contents were tested by the State Bureau of Investigation and found to contain crack cocaine.

Defendant was indicted 14 December 1992 for possession of crack cocaine in violation of N.C. Gen. Stat. § 90-95. On 1 March 1994, defendant was convicted of felonious possession of a controlled substance and sentenced to five years imprisonment. From this judgment, defendant appeals.

## I. Testimony of Detective Mickey Biggs

[1] On 19 November 1992, defendant filed a motion for discovery under N.C. Gen. Stat. §§ 15A-902 and 15A-903 requesting, among other things, access to "[a]ll results or reports of physical or mental examination or of tests, measurements or experiments, made in connection with the case. . . ." The State complied with the discovery request but did not disclose the substance of the testimony to be offered by Lumberton Police Detective Mickey Biggs. Over the defendant's objection, the State called Detective Biggs as an expert witness to testify on the subject of fingerprint identification. Defendant contends the State failed to disclose during discovery "the evidence to which Detective Mickey Biggs testified to at trial" and this violated defendant's constitutional rights and G.S. 15A-903(e). We disagree.

The court accepted Detective Biggs as an expert in the field of fingerprint identification. Detective Biggs was given State's Exhibit Number 1 and asked if he had ever seen or examined it before.

Detective Biggs answered he had not seen the evidence until that day. He was asked to describe the evidence and replied that it looked like "a small cellophane bag used for packaging controlled substances." Detective Biggs then testified in general terms about packages similar to State's Exhibit Number 1 and how difficult it is to retrieve "a classifiable print" from such a package. He gave a general explanation of the overall process of collecting, analyzing and identifying "classifiable" fingerprints. During cross-examination, Detective Biggs further explained it would be difficult to obtain identifiable fingerprints from this particular cellophane bag because it had been twisted, severely crumpled and appeared to be burned on one end.

N.C. Gen. Stat. § 15A-903(e) (1988) states:

Upon motion of a defendant, the court must order the prosecutor to provide a copy of or to permit the defendant to inspect and copy or photograph results or reports of physical or mental examinations or of tests, measurements or experiments made in connection with the case, or copies thereof, within the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecutor. . . .

While this statute requires the State to allow defendant access to any results, reports of physical or mental examinations, tests, measurements or experiments made in connection with the case, Detective Biggs did not conduct any tests in preparation for this trial and he did not testify regarding any test results or examinations specific to this case. He formulated his opinion as to the cellophane bag based on an examination made for the first time at trial. Defendant had ample opportunity to thoroughly cross-examine Detective Biggs about his opinion at trial.

[2] Defendant also argues Detective Biggs was allowed to testify as an expert witness "concerning matters [about] which he lacked personal knowledge," those being DNA testing of saliva. Defendant contends this testimony was contrary to the North Carolina Rules of Evidence on expert witnesses, and unduly prejudiced him thereby entitling him to a new trial. We disagree.

The State's direct examination of Detective Biggs was about fingerprint identification in general. Detective Biggs was received by the court only as a latent fingerprint expert and not as a DNA specialist. It was only upon cross-examination by the defendant that Detective

Biggs discussed DNA analysis. Defense counsel asked him a series of general questions as to whether saliva tests can be conducted for identification purposes and whether an identification can be made using DNA tests. The detective testified he had received some training in the collection of DNA samples but no training in conducting DNA testing. Detective Biggs admitted he did not know if there were sufficient samples in this case for some other expert to make a DNA test. Since defendant "opened the door" during cross-examination, the State appropriately clarified DNA testing procedures by asking follow-up questions during redirect examination of Detective Biggs. *State v. Brown*, 64 N.C. App. 637, 644-45, 308 S.E.2d 346, 350-51 (1983), *aff'd*, 310 N.C. 563, 313 S.E.2d 585 (1984). Finally, we note the trial court sustained defendant's objections when the State asked a question on DNA testing that was clearly outside the scope of expertise of Detective Biggs.

## II. Jury Instructions on Constructive Possession

**[3]** Defendant next argues the trial court erred because there was insufficient evidence to support a jury instruction on the doctrine of constructive possession. The trial court instructed the jury on both actual and constructive possession. The court's jury instruction included the following:

> Now, members of the jury, possession of a substance may be either actual or constructive.

> A person has actual possession of a substance if he has it on his person, is aware of it's [sic] presence and has both the power and intent to control it's [sic] disposition or use.

> A person has constructive possession of a substance if he does not have it on his person, but is aware of it's [sic] presence and has both the power and intent to control it's [sic] disposition or use.

> A person's awareness of the presence of the substance and his power and intent to control it's [sic] disposition or use may be shown by direct evidence or it may be inferred from the circumstances.

Assuming, *arguendo*, the constructive possession charge to the jury was improper, this was not prejudicial error because the court properly instructed the jury about actual possession, which may be shown by direct evidence or inferred from the circumstances. *State v. Thorpe*, 326 N.C. 451, 454, 390 S.E.2d 311, 313 (1990).

The evidence against defendant included incriminating circumstances that would allow a jury to conclude through circumstantial evidence that defendant had actual possession of the crack cocaine. Evidence that defendant took something from his pocket, placed it in his mouth while walking away from the prison guard who was attempting to conduct a search, combined with the fact that the defendant stopped, ran his hand back over his mouth and immediately thereafter the prison guard retrieved a wet, plastic bag containing crack cocaine which was in close proximity to defendant is sufficient circumstantial evidence to conclude the defendant had actual possession of the crack cocaine.

### III. Closing Arguments

[4] Defendant's contention that the trial court judge made improper rulings during closing arguments is unsupported by the record. There is nothing in the trial transcript that supports defendant's claim that the prosecutor violated N.C. Gen. Stat. § 15A-1230 (1988) by injecting his experience and personal beliefs as to the truth of the evidence, or by arguing matters which were outside the record. The control of closing arguments by the prosecution and defense counsel is left to the discretion of the trial judge, and his rulings will not be disturbed in the absence of abuse of discretion. *State v. Hunter*, 297 N.C. 272, 278, 254 S.E.2d 521, 524 (1979).

In support of his contention, defendant objects to the prosecutor's statement that "DNA testing I submit to you is not an inexpensive type test. And I'd submit to you that's the type of test that you use when you have rape. . . ." This statement does not constitute an injection of experience or personal belief as to the truth of the evidence, nor does it involve matters that were outside of the record. As already discussed, the DNA issue initially arose when defendant questioned the lack of any DNA testing by law enforcement officials.

[5] Defendant's other argument that the court erred in sustaining the prosecution's objections during defense counsel's closing argument is also without merit. Defense counsel misled the jury when he said, "[defendant] can't call an expert from Raleigh" since a defendant has the right to call experts and to subpoena potential witnesses himself. The court properly exercised its discretion in sustaining the State's objections to the statement.

For the foregoing reasons, we find defendant's final argument questioning the sufficiency of the evidence to be without merit and we overrule this assignment of error.

No error.

Judge EAGLES and WALKER concur.